

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**RECEIVED**

## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MAR 17 2022

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Mattie Twynette Lomax )
)
_____, )
)
**Plaintiff(s),** )
)
**vs.** )  **Case No.**
)
CITY OF CHICAGO, a MUNICIPAL CORP. )
_____ )  **1:22-cv-01404**
)  **Judge Manish S. Shah**
LANDON HOWARD/ CLAIMS SPECIALIST )  **Magistrate Judge Maria Valdez**
_____, )  **RANDOM**
)
**Defendant(s).** )


## COMPLAINT FOR VIOLATION OF CONSTITUTIONAL RIGHTS

*This form complaint is designed to help you, as a* **pro se** *plaintiff, state your case in a clear manner. Please read the directions and the numbered paragraphs carefully. Some paragraphs may not apply to you. You may cross out paragraphs that do not apply to you. All references to "plaintiff" and "defendant" are stated in the singular but will apply to more than one plaintiff or defendant if that is the nature of the case.*

1.   This is a claim for violation of plaintiff's civil rights as protected by the Constitution and

laws of the United States under 42 U.S.C. §§ 1983, 1985, and 1986.

2.   The court has jurisdiction under 28 U.S.C. §§ 1343 and 1367.

3.   Plaintiff's full name is   Mattie Twynette Lomax _____.


*If there are additional plaintiffs, fill in the above information as to the first-named plaintiff and complete the information for each additional plaintiff on an extra sheet.*

1

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

4.     Defendant, __Landon Howard/ Claims Specialist_____, is
                                        (name, badge number if known)

       ☑ an officer or official employed by __the City of Chicago, Il  Claims Unit_____;
                                    (department or agency of government)
       __and still employed with in the City of Chicago_____or

       ☐ an individual not employed by a governmental entity.

*If there are additional defendants, fill in the above information as to the first-named defendant and complete the information for each additional defendant on an extra sheet.*

5.     The municipality, township or county under whose authority defendant officer or official

       acted is __a employee of the governmental entity_____. As to plaintiff's federal

       constitutional claims, the municipality, township or county is a defendant only if

       custom or policy allegations are made at paragraph 7 below.

6.     On or about __10/12/2017_____, at approximately __11:00_____ ☐ a.m. ☐ p.m.
                    (month, day, year)
       plaintiff was present in the municipality (or unincorporated area) of __certified & U.S.__

       __mail carrier__ __letter to the  plaintiff__ , in the County of __Cook_____,

       State of Illinois, at __9330 S. Wentworth Ave Uit 41, Chicago, IL 60620__,
                             (identify location as precisely as possible)

       when defendant violated plaintiff's civil rights as follows *(Place X in each box that applies)*:

       ☐      arrested or seized plaintiff without probable cause to believe that plaintiff had committed, was committing or was about to commit a crime;
       ☐      searched plaintiff or his property without a warrant and without reasonable cause;
       ☐      used excessive force upon plaintiff;
       ☒      failed to intervene to protect plaintiff from violation of plaintiff's civil rights by one or more other defendants;
       ☐      failed to provide plaintiff with needed medical care;
       ☒      conspired together to violate one or more of plaintiff's civil rights;
       ☐      Other:

       _____

       _____

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

_____ .

7.    Defendant officer or official acted pursuant to a custom or policy of defendant

municipality, county or township, which custom or policy is the following: (*Leave blank*

*if no custom or policy is alleged*): following custom in a injury cause by the

city personell, pursuant to (735 ILCS 5/2-1116) Premises Liability act

Fault, means any act or omission that (1) is negligent, willful and wanton,

or reckless, is a breach of contract with an express r imlied warranty .

8.    Plaintiff was charged with one or more crimes, specifically:

_____

_____

_____

_____

_____

9.    (*Place an X in the box that applies. If none applies, you may describe the criminal
proceedings under "Other"*)  The criminal proceedings

      ☑  are still pending.

      ☐  were terminated in favor of plaintiff in a manner indicating plaintiff was innocent.[1]

      ☐  Plaintiff was found guilty of one or more charges because defendant deprived me of a

      fair trial as follows_____

      _____ .

      ☐  Other: _____ .

_____

[1]Examples of termination in favor of the plaintiff in a manner indicating plaintiff was innocent
may include a judgment of not guilty, reversal of a conviction on direct appeal, expungement of the
conviction, a voluntary dismissal (SOL) by the prosecutor, or a *nolle prosequi* order.

3

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

10.     Plaintiff further alleges as follows: (*Describe what happened that you believe supports your claims.  To the extent possible, be specific as to your own actions and the actions of each defendant.*)

It was of a conspiracy with in the claims unit to denied the plaintiff claim and no

investigation of her claim was never performent by Landon Howard/ claim specialis,

He just moved to a different location within the city of chicago.

11.     Defendant acted knowingly, intentionally, willfully and maliciously.

12.     As a result of defendant's conduct, plaintiff was injured as follows:

Plaintiff was injured by a fall on city property and as a result plaintiff have suffer pain

from the fall in which the City of Chicago claim , state it was open and obvious, so why

was it open in the first place?

13.     Plaintiff asks that the case be tried by a jury.   ☑ Yes        ☐ No

4

14.     Plaintiff also claims violation of rights that may be protected by the laws of Illinois, such

as false arrest, assault, battery, false imprisonment, malicious prosecution, conspiracy,

and/or any other claim that may be supported by the allegations of this complaint.


**WHEREFORE,** plaintiff asks for the following relief:

A.      Damages to compensate for all bodily harm, emotional harm, pain and suffering,

loss of income, loss of enjoyment of life, property damage and any other injuries

inflicted by defendant;

B.      ☑ *(Place X in box if you are seeking punitive damages.)* Punitive damages

against the individual defendant; and   **Landon Howard**

C.      Such injunctive, declaratory, or other relief as may be appropriate, including

attorney's fees and reasonable expenses as authorized by 42 U.S.C. § 1988.

Plaintiff's signature: _____

Plaintiff's name *(print clearly or type)*:  Mattie Twynette Lomax _____

Plaintiff's mailing address: P.O. Box 198366 _____

City Chicago _____ State IL _____ ZIP 60619 _____

Plaintiff's telephone number: (773  ) 412-9187 _____.

Plaintiff's email address *(if you prefer to be contacted by email)*: akalomax@gmail.com

_____

15. Plaintiff has previously filed a case in this district. ☐ Yes ☐ No

*If yes, please list the cases below.*


*Any additional plaintiffs must sign the complaint and provide the same information as the first plaintiff.  An additional signature page may be added.*

# EXHIBITS ATTACHED TO THE CASE

Case #: 2017 M1 1543

# P.O. Box Service Fee Notice

## ENGLEWOOD

611 W 63RD ST, CHICAGO, IL 60621

### (773) 224-1570

Paid on
Sept 29, 2017

WEBMATS BAT710BI

LOMAX MATTIE
PO BOX 21392
CHICAGO, IL 60621

**Date of Notice: 08/30/2017**
**Box # 21392**
**6 Months: $32.00**
**12 Months: $64.00**
**Due Date: 09/30/2017**

Dear LOMAX MATTIE:

This is a friendly reminder that your Post Office Box or Caller Service renewal fee is due. If you have already paid this fee, please disregard this notice and thank you for your continued business with the United States Postal Service. If you have not yet submitted your payment, please do so now.

New! At your location, at least one of the following enhanced services is available: Real Mail Notification (receive email or text when new mail is in your box), Street Addressing (allows private carrier package delivery) and Signature on File for easy pickup for some signature items). There is no extra charge for these enhancements. Visit your Post Office to sign up for these services today! These services do not apply to Caller Service and Group E Box customers.

For your convenience, you can sign up at www.usps.com/poboxes and renew or manage your PO Box online. You can use your credit card to make a one-time payment or sign up for automatic payments so you never miss a due date. You can also renew your PO Box at any one of our Self-Service Kiosks located at select Post Offices nationwide. Go to http://www.usps.com/locator/welcome.htm and look for Self-Service Kiosks to find a location near you.

As always, payments can be made at the Post Office or mailed to the attention of the Postmaster at the address indicated above. Please make checks or money orders payable to the US Postal Service and include your PO Box number and ZIP Code. If paying by mail, a receipt will be delivered to your PO Box.

Note: Caller Service can only be paid **in person or by mail.** Please be sure to include this notice with your remittance. Caller Service receipts will be provided at the caller service pickup window.

If your payment is not received by the due date, access to your PO Box will be blocked and caller services will be limited. If we have not received your payment by the 10th day after the due date, your PO Box service will be terminated, incoming mail will be returned to the sender, and, in addition to any unpaid monthly PO Box fees, you will be charged a handling fee to reopen your box. To avoid this inconvenience, we encourage you to renew on time.

As a reminder, your account information must be current. If your physical address or other pertinent information has changed since you applied for your PO Box, please ask a Retail Associate at your Post Office to update the filed copy of your PS Form 1093, *Application for Post Office Box Service.*

To update your information for Caller Service, you can ask a Retail Associate to update the PS 1093-C, *Application for Caller Service.*

You are a valued customer and we appreciate your business. Thank you,

POSTMASTER, CHICAGO

# CHICAGO POLICE DEPARTMENT — Incident Report

## ORIGINAL CASE INCIDENT REPORT

RD #: RD #: JA459744

...BEGIN TO CROSS THE STREET. COMP...
...COMP HAS A CONTUSION ON HER RIGHT KNEE AND HER LEFT SHOULDER. COMP
...WENT TO CLINIC WAS EXAMINED BY DR COLEMAN AT 9415 S WESTERN AVE. AND PRESCRIBED MEDS FOR PAIN.
...COMP HAS NO FURTHER INFO.

### CLOSED NON-CRIMINAL

**IUCR:** 5080 - Non-Criminal - Other Non-Criminal Persons

**Occurrence** 6300 S Western Ave **Beat:** 0825 **Unit Assigned:** 0702
**Location:** Chicago IL
303 - Sidewalk

| Star No | Emp No | Name | RO Arrival Date: 05 October 2017 19:20 | Unit | Beat |
|---------|--------|------|----------------------------------------|------|------|

Approving Supervisor 29 September | - 2 BRADY, Lynette | 05 Oct 2017 21:47 | 124
11:30

Requesting Officer 19779 | BRADY, Lynette | 05 Oct 2017 20:17 | 007 | 0702

### COMPLAINANT - Individual

**Name:** LOMAX, Mattie  **Demographics**

**Res:** 6300 S Western Ave **Beat:** 0825   Age: Years
Chicago IL

**Beat:** 5100

### VICTIM - Individual

**Name:** LOMAX, Mattie   **Demographics**
Female   **Age:** 67 Years
**Res:** 9330 S Wentworth Ave #41 **Beat:** 0634   Black
Chicago IL
773 - 253 - 8206

**Beat:** 5100

**Sobriety:** Sober

### Injury Info (LOMAX, Mattie - Complainant)

**Responding Unit:**

### Injury Info (LOMAX, Mattie - Victim)

**Responding Unit:**

| Type | Weapon Used |
|------|-------------|
| Abrasions | Other |

### DOMESTIC INFO

### Miscellaneous

Victim Information Provided

Flash Message Sent ? No

RD #: JA459744

Print Generated By: _____   Page 2 of 2

**Chicago Police Department - Incident Report**

RD #: **JA459744**

**NARRATIVE**

COMP STATES SHE EXITED THE 63RD ST BUS, AND BEGIN TO CROSS THE STREET. COMP TRIPPED ON SOME UNEVEN CONCRETE/SIDEWALK AND FELL. COMP HAS A CONTUSION ON HER RIGHT KNEE AND HER LEFT SHOULDER. COMP WENT TO CLINIC WAS EXAMINED BY DR COLEMAN AT 9415 S WESTERN AVE. AND PRESCRIBED MEDS FOR PAIN. COMP HAS NO FURTHER INFO.

**PERSONNEL**

| | Star No | Emp No | Name | User | Date | Unit | Beat |
|---|---|---|---|---|---|---|---|
| Approving Supervisor | 1698 | | IRAMIYA, Admon | | 05 Oct 2017 21:47 | 124 | |
| Reporting Officer | 19779 | | BRADY, Lynette | | 05 Oct 2017 20:17 | 007 | 0702 |

INCIDENT Non-Criminal Terrific Citizen Matric   CASE # ___ IUCR CODE ___

DATE/TIME OF OCCURRENCE ___ BEAT ___ 11-1130

NAME OF VICTIM/COMPLAINANT ___ Today Mattie   BEAT/UNIT OF ASSIGN. ___ BEAT OF OCCUR. ___

CASE NAME - PEOPLE OF THE STATE OF ILLINOIS/CITY OF CHICAGO vs.

If an arrest has taken place, the following is your court information: Date: ___ Time: ___ Court Branch: ___ Court Loc.: ___

If you need more help call the Victim/Witness Assistance Program of the Cook County State's Attorney's Office at (773) 869 - 7200.

Your case will be on file with the Chicago Police Department under the above listed R.D. Number. Refer to this number whenever you are communicating with the Chicago Police Department concerning this incident. Your case will be assigned for follow-up investigation based upon specific facts obtained during the initial investigation. The presence of these facts can predict whether a comprehensive follow-up investigation would likely result in the arrest and prosecution of the suspect(s) or the recovery of property. Your case will be reviewed and retained to determine if criminals active in the area can be identified. *A detective will not routinely contact you unless additional information is required or your further assistance is needed.*

## TO REPORT ADDITIONAL INFORMATION

If you have knowledge of specific facts which might assist in the investigation of your case, please contact the unit marked below:

| PROPERTY CRIMES | VIOLENT CRIMES | SPECIAL VICTIMS |
|---|---|---|
| AREA CENTRAL ☐ (312) 747-8382 | ☐ (312) 747-8380 | ☐ (312) 747-8385 |
| AREA SOUTH ☐ (312) 747-8273 | ☐ (312) 747-8271 | ☐ (312) 747-8274 |
| AREA NORTH ☐ (312) 744-8263 | ☐ (312) 744-8261 | ☐ (312) 744-8266 |

BOMB SECTION ☐ (312) 746-7180   ARSON SECTION ☐ (312) 746-7618

## MISSING PERSONS LOCATED

☐ When persons reported missing are located or have returned, the MISSING PERSONS SECTION must be contacted IMMEDIATELY at (312) 747-5789 or (312) 747-2881.

## COPY OF THE REPORT

The above listed R.D. Number may suffice for insurance purposes. However, there may be instances when a copy of the case report is desired. A copy of the case report which verifies that an incident of injury, loss or damage has been reported to the Chicago Police Department may be obtained after 14 working days from the date the incident was reported. To obtain a copy of the report, send a check or money order payable to the *"DEPARTMENT OF REVENUE-CITY OF CHICAGO"* in the amount of $.50 and a self-addressed stamped return envelope to: Chicago Police Department Headquarters, Records Inquiry Section, 1st floor, 3510 South Michigan Avenue, Chicago, Illinois 60653. Include the following information with your request: 1) Victim's name and address (or person reporting crime ), 2) Type of incident, 3) Address of occurrence, and 4) R.D. Number.

## MAKE THE RIGHT CALL

To report a crime in progress or other emergency that requires immediate police response, call 911.
To report non-emergency situations, call the Police Department at 311 within City limits, or if outside the City limits call (312) 746-6000.

## CHICAGO ALTERNATIVE POLICING STRATEGY (CAPS) SAFE NEIGHBORHOODS ARE EVERYBODY'S BUSINESS

The police alone cannot solve the problems of crime in our City. It takes an active and informed community working with the police and other City agencies to really make a difference. Join your neighbors and your neighborhood police officers as we work together to reduce crime and improve the quality of life in our City. Become part of the CAPS team in your community. To find out how, call 311 or visit online at: http://www.chicagopolice.org.

You live on Beat ___

Your next Beat Community Meeting will be held on (date / time) ___

at (location) ___

CPD-11.383 (Rev. 5/13)-English                    IMPORTANT: RETAIN THIS NOTICE FOR YOUR PERSONAL RECORDS

## TELECOMMUNICATIONS DEVICE FOR THE DEAF/TELETYPE (TDD/TTY)

Hearing-impaired persons who possess such equipment may communicate with the Chicago Police Department 24 hours a day by calling (312) 746-9715. Hearing-impaired persons in need assistance during normal business hours may also contact their local police district or the Special Activities Section at (312) 745 - 5823.

## OBTAINING A WARRANT OR SUMMONS FOR CRIMINAL CHARGES

If an arrest is made, you will be informed of the date, time, and location of the court proceedings at which your appearance will be required. When you report a crime and an arrest is not made, you may go in person to the appropriate court listed below to request that criminal proceedings be initiated by way of a warrant or summons. Bring this Victim Information Notice and any other relevant information, such as the offender's name, physical description, and home address to the warrant officer assigned to the court between 8:30 am and 11:30 am Monday through Friday (excluding court holidays). *The warrant officer will then assist you in the process of obtaining the warrant or summons.*

| Police District of Occurrence | | Court Branch for Warrant or Summons | |
|---|---|---|---|
| ☐ 14,15,16,17,25 | | Branch 23 | 5555 W. Grand Ave. |
| ☐ 1,18,19,20,24 | | Branch 29 | 2452 W. Belmont Ave. |
| ☐ 2,7,8,9 | | Branch 34 | 155 W. 51st St. |
| ☐ 3,4,5,6,22 | | Branch 35 | 727 E. 111th St. |
| ☐ 10,11,12 | | Branch 43 | 3150 W. Flournoy St. |

* For incidents relating to domestic violence, a warrant/summons will only be issued from the Domestic Violence Court located at 555 West Harrison, on the first floor.

## AUTOMATED VICTIM NOTIFICATION (AVN)

The County of Cook has a toll free, multilingual, 24-hour Automated Victim Notification System. To obtain information about a defendant's court date or custody inside of Cook County Jail: call 1-877-846-3445. *Do not depend only on the AVN for your safety. If you feel that you may be in danger, take precautions as if the defendant has already been released.*

## ILLINOIS CRIME VICTIMS NOTIFICATION

Innocent victims of violent crime may be eligible to receive benefits from the Illinois Crime Victims Compensation program for such costs as medical, funeral, loss of support, and wage loss. *NO RECOVERY IS PROVIDED FOR PROPERTY LOSS OR DAMAGE, NOR FOR PAIN OR SUFFERING.* To apply or to determine whether one qualifies, the victim, or if deceased, a relative or dependent, must contact the Illinois Attorney General's Office. Further information and claim forms can be obtained from the Crime Victims Compensation Program, Office of the Attorney General of Illinois, 100 West Randolph Street, 13th Floor, Chicago, Illinois 60601, or by calling (312) 814-2581 (in Chicago) or 1-800-228-3368, TTY: 1-877-398-1130 or email at crimevictimservices@atg.state.il.us.

## RECOVERY OF PROPERTY - STOLEN VEHICLE RECOVERED

The Chicago Police Department must be notified *IMMEDIATELY,* via the "911" emergency number when property reported lost or stolen is recovered.

## CREDIT CARDS - CHECKS, LOST OR STOLEN

Immediately notify the concerned credit card issuer or bank by telephone to reduce the possibility of being liable for the unauthorized use of your lost or stolen credit card or check. It is suggested that you also inform the credit card issuer or bank in writing as a follow-up measure to ensure proper notification.

*oct 6, 2017*



**ADVOCATE TRINITY HOSPITAL**
2320 E. 93rd Street
Chicago, IL 60617-3983

| | |
|---|---|
| Ordering Dr | : COLEMAN-MD,CEDRIC L |
| Attending Dr | : COLEMAN-MD,CEDRIC L |
| Admitting Dr | : COLEMAN-MD,CEDRIC L |
| Referring Dr | : COLEMAN-MD,CEDRIC L |
| Consulting Dr | : |

## Diagnostic Imaging

| Procedure:
XR SHOULDER LT 3V | Procedure Date/Time:
10/6/2017 11:00 CDT | Accession #
XR-17-0596980 | Patient Age at Exam:
67 years |

CPT code
73030
73030

EXAM: XR SHOULDER LT 3V 10/06/2017

INDICATION: Left shoulder pain following injury.

COMPARISON: None.

Three views of left shoulder obtained on four images are submitted.

FINDINGS: No definitive acute fracture, dislocation, or significant osseous abnormality of visualized left shoulder is seen.

Tortuous thoracic aorta and endplate degenerative changes of partially included thoracic spine are noted.

IMPRESSION: No definitive acute or significant osseous abnormality of visualized left shoulder. Recommend followup as clinically warranted.

**** F I N A L ****

Transcribed By: TP
10/06/17 1:18 pm

Dictated By:      KIM-MD, HOWARD MD

Electronically Reviewed and Approved By:      KIM-MD, HOWARD MD  10/06/17 1:21 pm

PLAINTIFF'S EXHIBIT 7

Send To :

**COLEMAN-MD,CEDRIC L**
**9415 S WESTERN AVENUE #209**
**CHICAGO, IL 60643-**

| Pt Name | : **LOMAX, MATTIE T** | Sex | : FEMALE |
|---|---|---|---|
| Pt Phone | : **(773)253-8206** | Age | : 67 years |
| MR # | : TRI-000900216 | Svc | : XRY |
| DOB | : 2/9/1950 | Pt Loc | : |
| Billing # | : 218738326 | | |
| Ord Dr | : COLEMAN-MD,CEDRIC L | Ord Dr # | : (708) 229-1600 |

Page 1 of 1

Print D/T : 10/7/2017 09:17 CDT

Summary Of Today's Visit                                                Page 1 of 1



# Summary of Today's Visit

**Lomax , Mattie   DOB:02/09/1950**
**Account No 19209**
**Gender:Female**
**Race:Black or African American**
**Ethnicity:Not Hispanic or Latino**
**Preferred Language:English**
**10/05/2017 visit with Cedric C. Coleman, MD**

## Reason for Visit
- Fell of bus pain in left arm
- Scar righ tknee

## Vitals
- Ht 5 ft 5 in (in)
- Wt 191 (lbs)
- BP-Treatment 144/81 (mm HG)
- Temp 97.6 (F)
- BMI 31.78 (Index)
- Pulse sitting 67

## Allergies
- N.K.D.A.

## Today's Diagnoses Include
- S40.012AContusion of left shoulder, initial encounter

## Medication List
- Start Meloxicam : 15 MG 1 tablet Orally Once a day,30 day(s) ,30 ,Refills: 0

**Other medications you are on**
- Taking Lorazepam : 1 MG 1 tablet at bedtime as needed Orally bid,30 days ,60 Tablet ,Refills: 0

## Your Next Appointment(s)
- Thu, 9 Nov 2017 at 11:15 AM with Cedric C. Coleman, MD at Cedric L Coleman Md 9415 S Western Ave Ste 209 Chicago, IL 606432730 Phone: 708-229-1600 (Reason: 1 month f/u)

Summary of Today's Visit for - Lomax , Mattie  DOB:02/09/1950  Account No: 19209
**Cedric L Coleman Md   9415 S Western Ave Ste 209   Chicago, IL 606432730   708-229-1600**
Summary generated by eClinicalWorks (www.eclinicalworks.com)
*This document contains confidential information about your health. To maintain your privacy, do not throw this document in the trash. If you do not wish to keep this document for your records, please shred or otherwise securely dispose of your copy. If you are not the intended recipient, please destroy this document and report it to the physician's office named above.*

Summary Of Today's Visit

Page 1 of 1



# Summary of Today's Visit

Lomax , Mattie  DOB:02/09/1950
Account No 19209
Gender:Female
Race:Black or African American
Ethnicity:Not Hispanic or Latino
Preferred Language:English
11/29/2017 visit with Cedric C. Coleman, MD

### Allergies

• N.K.D.A.

### Medication List

Other medications you are on
• Taking Lorazepam : 1 MG 1 tablet at bedtime as needed Orally bid,30 days ,60 Tablet ,Refills: 0
• Taking Meloxicam : 15 MG 1 tablet Orally Once a day,30 day(s) ,30 ,Refills: 0

### Other Medical Conditions (Problem List)

• M19.90 Osteoarthritis
• F43.9  Stress

### Your Next Appointment(s)

• Tue, 27 Feb 2018 at 10:15 AM with Cedric C. Coleman, MD at Cedric L Coleman Md 9415 S Western Ave Ste 209 Chicago, IL 606432730 Phone: 708-229-1600 (Reason: 3 month f/u)

Summary of Today's Visit for Lomax , Mattie  DOB:02/09/1950  Account No 19209
Cedric L Coleman Md   9415 S Western Ave Ste 209   Chicago, IL 606432730   708-229-1600
Summary generated by eClinicalWorks (www.eclinicalworks.com)
This document contains confidential information about your health. To maintain your privacy, do not throw this document in the trash. If you do not wish to keep this document for your records, please shred or otherwise securely dispose of your copy. If you are not the intended recipient, please destroy this document and report it to the physician's office named above.

SUBMITTED - 8695686 - Mattie Lomax - 3/2/2020 3:53 PM

# *Trinity Hospital*
## ✚*Advocate*®

2320 East 93rd Street
Chicago, Illinois 60617-9984
Telephone 773-967-2000
Radiology Department: 773-967-3998

DATE: _____

To Whom It May Concern:

This is to certify that your employee _Mattie Lomax_

was in our department today undergoing an examination.

If you have any questions regarding the above, please feel free to contact me at
(773) 967-3998.

Our regular business hours are:        Monday through Friday:
                                       6:30 a.m. until 6:30 p.m.
                                       Saturday
                                       7:00 a.m. until 3:30 p.m.

Thank you,

Diagnostic Imaging Department

Release to work—patient-Jan.07.doc



FIN: 218738326

MED

MR: 000900216

LOMAX, MATTIE T



LAB

TRI









Bus Stop

Image capture: Oct 2017 © 2018 Google

Google Maps    S Western Ave

Chicago, Illinois

Google, Inc.

Street View - Oct 2017



6301 Sou
Western

It is here where
the sidewalk is lifted up from
the ground.

9/29/2018

6305 S Western Ave - Google Maps

**Google** Maps    6305 S Western Ave



Image capture: Oct 2017    © 2018 Google

Chicago, Illinois

Google, Inc.

Street View - Oct 2017



SUBMITTED - 8695686 - Mattie Lomax - 3/2/2020 3:53 PM

Google Maps    6307 S Western Ave





Image capture: Oct 2017   © 2018 Google

Chicago, Illinois

Google, Inc.

Street View - Oct 2017



6307 Sout
Western A

· 9/29/2018

6305 S Western Ave - Google Maps

**Google** Maps   6305 S Western Ave



Chicago, Illinois

Google, Inc.

Street View - Oct 2017



SUBMITTED - 8695686 - Mattie Lomax - 3/2/2020 3:53 PM

CLAIMS

(312) 744-5650

OCt 4, 2017

Case # 2017M1302539

3

# GENERAL LIABILITY - PERSONAL INJURY CLAIM FORM

Indicates
required field *

Claimant Information

Claimant Name:* Mattie Lomax

Street Address:* 9330 S. Wentworth Ave/ unit #41

City/State/Zip
Code:* Chicago. IL 60620

773-253-8206

Telephone
Number:

(Home) (Work) (Mobile)

Injured Person Information

☑ Injured
Person same as
claimant

Name of injured
person: Yes

Street Address: 63rd St & Westren

City/State/Zip
Code: Chicago, IL

Telephone
Number:

(Home) (Work) (Mobile)


PLAINTIFF'S
EXHIBIT
B

General Claim Information

**Date & Time of Incident:\***
September 29, 2017 on a Friday _____ (Date)
Between 11: 00 am and 11:30 am _____ (Time)

**Describe in Detail How Incident Occurred:\***
Ms. Lomax had just gotten off of the west bound 63rd street bus, about to walk cross the street on west western and 63rd and all of a sudden Ms. Lomax fail to the grown  Scaring her right knee (see attached picture) in which two ladies had helped her off of the ground.

**Describe injuries:\***
Scaring her right knee
See attached Picture

**Street Address of Incident or Location of Incident: \***
W. 63rd St & S. Western

**City/State of Incident:**
Chicago, IL 60636

**Police Report Number:**
5A - 459744

Witness Information

Signature Information

VERIFICATION BY CERTIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct.*

Preparer's Name:* _Mattie Lomax_

Claimant Signature: * _Mattie Lomax_

Date:*_____

Preparer Signature: _Mattie Lomax_    Date:

_October 4, 2017_

City of Chicago Claims Unit
30 N. LaSalle Street, Suite 800
Chicago, IL 60602
(312) 744-5650 Voice
(312) 744-5449 Fax

Gmail - I need footage from a camera on 63rd st and western

Case# 2017 MI 302539

**Touch Of Color** <akalomax@gmail.com>

# I need footage from a camera on 63rd st and western
2 messages

**Touch Of Color** <akalomax@gmail.com>
To: cdotfoia@cityofchicago.org

Mon, Mar 19, 2018 at 4:48 PM

Hi, my name is Mattie Lomax,

On September 29, 2017 between the hours of 11:00 am and 11:30 am I feild on the corner of 63rd and western on a big pic of concrete that was lifted from the ground and I hurt myself. Can I get photo of the addicedent

Mattie Lomax/
773-359-4190 **or cell** 773-494-5245

**3 attachments**



**Bus stop at 63rd and western.jpg**
910K



**side walk lifted up.jpg**
789K

**s. western ave the other side.pdf**
710K

**cdotfoia** <cdotfoia@cityofchicago.org>
To: Touch Of Color <akalomax@gmail.com>

Tue, Mar 20, 2018 at 2:24 PM

Good Morning Mattie Lomax

This e-mail is in response to your FOIA request for video footage from the intersection of 63rd Western on Sept 29, 2017.

Streaming video is retained for 30 days. Your request is over the 30-day aging cycle. Please note that Section 11-208.6(g) of the Automated Traffic Law Enforcement Systems ("ATLES") statute states that:

(g) Recorded images made by an automatic traffic law enforcement system are confidential and shall be made available only to the alleged violator and governmental and law enforcement agencies for purposes of adjudicating a violation of this Section, for statistical purposes, or for other governmental purposes. Any recorded image evidencing a violation of this Section, however, may be admissible in any proceeding resulting from the issuance of this citation – 625 ILCS 11-208.6(g)

Red Light violations are retained for 2 years. Those receiving red light tickets are able to view the video from the City's website with violation notice and license plate numbers.

CDOT does not posses any records that are responsive to your request.

Thank you.

CDOT Freedom of Information staff

**From:** Touch Of Color <                              >
**Sent:** Monday, March 19, 2018 4:48 PM
**To:** cdotfoia
**Subject:** I need footage from a camera on 63rd st and western

[Quoted text hidden]

This e-mail, and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail (or the person responsible for delivering this document to the intended recipient), you are hereby notified that any dissemination, distribution, printing or copying of this e-mail, and any attachment thereto, is strictly prohibited. If you have received this e-mail in error, please respond to the individual sending the message, and permanently delete the original and any copy of any e-mail and printout thereof.

*Oct. 12, 2017*



**CITY OF CHICAGO**
**DEPARTMENT OF LAW**
**City Claims Unit**

## VIA CERTIFIED & U. S. MAIL

October 12, 2017

**MATTIE LOMAX**
**9330 S. WENTWORTH AVE UNIT 41**
**CHICAGO IL. 60620**

RE:  Our Client:      **City of Chicago**
     Claimant:       **MATTIE LOMAX**
     Loss Date:      09/29/2017
     Our File #:     CI-17-500747-01

Dear MATTIE LOMAX,

This letter will acknowledge receipt of your claim filed with the City of Chicago and will further serve to advise that your claim is subject to a one year Statute of Limitations. The Statute will expire on the one-year anniversary of the loss.

In the event, prior to that date, you fail to resolve or pursue further legal recourse, your ability to do so will forever be lost.

Your claim is under investigation and we will be in contact with you upon its completion.

Sincerely,

**Landon Howard**
**Claims Specialist**
**312-744-6729**

PLAINTIFF'S
EXHIBIT
C

30 NORTH LASALLE STREET, ROOM 800, CHICAGO, ILLINOIS 60602.
TEL. (312) 744-5650  FAX (312) 744-5449

312-744-5650    Main office #
312-744-6729    Landon Howard
                #

DEPARTMENT OF LAW

Claims Unit

30 North LaSalle Street

Suite 800

Chicago, Illinois 60602



Dec 8, 2017

2120 - Served    2220 - Not Served    2620 - Sec. of State
2121 - Alias Served    2221 - Alias Not Served    2621 - Alias Sec. of State
**Small Claims Summons (Claims not to exceed $10,000)**

**(09/01/16) CCM N751 A**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### MUNICIPAL DEPARTMENT, SMALL CLA MUNICIPAL DISTRICT

Name all Parties

MATTIE LOMAX

_____ Plaintiff(s)

v.

CITY OF CHICAGO DEPARTMENT OF LAW CITY CLAIMS

_____ Defendant(s)

UNIT/DBA/ LANDON HOWARD CLAIMS SPECIALIST

30 N. LaSalle St.    Address of Defendant(s)
Please serve as follows:    Certified Mail    Sheriff Service (Plaintiff check one)    Alias

Chicago, Il 60602

No. **17M1302539**

Amount Claimed: $ 5,000.00

*Return Date: 01-05-2018

Trial Date: _____

Time: _____ Room: _____

### SMALL CLAIMS SUMMONS
### (IL Sup. Ct. Rules 281-288)

To each Defendant:

YOU ARE SUMMONED and required:

To file your written appearance by yourself or your attorney and pay the required fee in:

X  Richard J Daley Center
50 W Washington, Rm 602
Chicago, IL 60602
District 3 - Rolling Meadows
2121 Euclid, Rm 121
Rolling Meadows, IL 60008
District 5 - Bridgeview
10220 S 76th Ave, Rm 121
Bridgeview, IL 60455

District 2 - Skokie
5600 Old Orchard Rd, Rm 136
Skokie, IL 60077
District 4 - Maywood
1500 Maybrook Dr, Rm 236
Maywood, IL 60153
District 6 - Markham
16501 S Kedzie Pkwy, Rm 119
Markham, IL 60428

on* _____ (Return Date)

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT, A COPY OF WHICH IS HERETO ATTACHED.

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service, and not less than 3 days before the day for appearance. If service cannot be made, this summons shall be returned so endorsed.

This summons may not be served later than 3 days before the day for appearance.

### THERE WILL BE A FEE TO FILE YOUR APPEARANCE

Atty. No.: _____ Pro Se 99500

Name: MATTIE LOMAX/ Pro se 9950

Atty for: MATTIE LOMAX PRO SE

Address: 9330 S. Wentworth Ave., #41 / P.O. Box 21392

City: Chicago    State: IL    Zip: 60620    Chicago, IL 60621

Telephone: 773-253-8206  C - 773-494-5245

Primary Email: akalomax@gmail.com

Secondary Email: _____

Tertiary Email: _____

Witness Date: _____

DOROTHY BROWN  DEC 08 2017
DOROTHY BROWN, Clerk of Court

Service by Certified Mail: _____
(Date)

Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person)

* NOTICE TO PLAINTIFF: Not less than 14 or more than 40 days after issuance of Summons

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
Page 1 of 2

Any person wishing to sue or defend a case as an indigent must petition the court to have the fees, costs and charges associated with the proceedings waived.

Customers may visit www.cookcountyclerkofcourt.org to access the Clerk's filing fees or telephone the District with additional questions.

## NOTICE TO DEFENDANT

1. The case will not be heard in court on the return date specified on the reverse side of this form. When you file your appearance and pay the fee required, you will receive your court date. You must come to court on this day.

2. If you do not file an appearance and pay the required fee a JUDGMENT BY DEFAULT may be taken against you for the relief requested in the complaint.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
Page 2 of 2

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois courts.

| STATE OF ILLINOIS, CIRCUIT COURT _____ COUNTY | APPLICATION FOR WAIVER OF COURT FEES | For Court Use Only |
|---|---|---|

**17M1302530**

| Instructions ▼ | |
|---|---|
| Enter above the county name where the case was filed. | |
| Enter the name of the person who started the lawsuit as Plaintiff/Petitioner. | MATTIE LOMAX <br> Plaintiff / Petitioner *(First, middle, last name)* |
| Enter the name of the person being sued as Defendant/Respondent. | v. |
| Enter the Case Number given by the Circuit Clerk or leave this blank if you do not have one. | CITY OF CHICAGO CLAIMS UNIT <br> Defendant / Respondent *(First, middle, last name)* <br> DBA / Landon Howard | Case Number |

| | |
|---|---|
| In 1a, enter your full name. If you are completing this form on behalf of a minor or an incompetent adult, provide that person's information. | **Pursuant to Illinois Supreme Court Rule 298 and 735 ILCS 5/5-105, I state:** <br><br> 1. I am providing the following information about myself: <br>    a. Name: **MATTIE**       **LOMAX** <br>       *First*     *Middle*     *Last* |
| In 1b, only enter the year you were born. **DO NOT** enter your entire date of birth. |    b. Year of Birth: 02/09/1950 |
| In 1c, enter your complete current address. |    c. Street Address: 9330 S. Wentworth Ave./unit 41 <br>       City, State, ZIP: Chicago, IL 60620 / P.O. Box 21392 <br>    d. I believe I cannot afford to pay the court fees in this case. Chicago, IL 60621 |
| In 2a, enter the number of people age 18 and older living in your house who you support. Support means that the people rely on you financially. | 2. I am providing the following information about people who live with me: <br>    a. I support 1    adults *(not counting myself)* who live with me. <br>    b. I support none    children under 18 who live with me. |
| In 2b, enter the number of people under age 18 living in your house who you support. | 3. I have received 1 or more of the benefits listed below in the past 4 weeks. <br>    ✔ Yes     ☐ No |
| In 3, check "Yes" if you have received at least 1 of the benefits listed in the past 4 weeks. |    • Supplemental Security Income (SSI) (Not Social Security) <br>    • Aid to the Aged, Blind and Disabled (AABD) <br>    • Temporary Assistance to Needy Families (TANF) <br>    • State Children & Family Assistance <br>    • Food Stamps (SNAP) <br>    • General Assistance (GA) <br>    • Transitional Assistance |
| If you check "Yes" in 3, skip 4 and sign the form. | **\*\*If you answered "Yes" in section 3, skip section 4 and sign the form.\*\*** |

Enter the Case Number given by the Circuit Clerk: _____

**4.  I checked "No" in section 3, so I am providing the following financial information:**

In 4a, check "Yes" if you have applied for at least 1 of the benefits listed in section 3.

a.  I have applied for 1 or more of the benefits listed in section 3:

☑ Yes  ☐ No

In 4b, check the box for each type of money you have received in the past month. Also enter the gross (before taxes) amount for each type.

Include the money received by the people you support who live with you. Support means that the people rely on you financially.

b.  I receive the following money each month. This includes money received by people I support who live with me. *(check all that apply)*

| | | | | |
|---|---|---|---|---|
| ☐ My employment: | $ 0 | | ☐ Other people's employment: | $ 0 |
| ☐ Child support: | $ 0 | | ☑ Social Security (not SSI): | $ 132.00 mo |
| ☑ Pension: | $ 927.99 | | ☐ Unemployment: | $ 0 |
| ☐ Other *(list type and amount)*: | | | | $ 0 |
| ☐ No income | | | | |

Total of all money received: $ 1059.99

In 4c, check the box for each type of money you have received in the past 12 months. For each type, enter the total amount received in the past 12 months before taxes.

Include the money received by the people you support who live with you.

c.  I received the following total amount of money in the past 12 months. This includes money received by people I support who live with me. *(check all that apply)*

| | | | | |
|---|---|---|---|---|
| ☐ My employment: | $ 0 | | ☐ Other people's employment: | $ 0 |
| ☐ Child support: | $ 0 | | ☑ Social Security (not SSI): | $ 132.00 |
| ☑ Pension: | $ 927.99 | | ☐ Unemployment: | $ 0 |
| ☐ Other *(list type and amount)*: | | | | $ 0 |
| ☐ No income | | | | |

Total of all money received: $ 11,404.88

In 4d, check all of your expenses for the past month and list the monthly amounts. Include the expenses of the people you support who live with you.

d.  My current monthly expenses are listed below. This includes the monthly expenses of the people I support who live with me. *(check all that apply)*

| | | |
|---|---|---|
| ☐ Rent: | $ 233.00 | per month |
| ☐ Home Mortgage: | $ 0 | per month |
| ☐ Other Mortgage: | $ 0 | per month |
| ☑ Utilities: | $ 56.00 | per month |
| ☑ Food: | $ 300.00 | per month |
| ☐ Medical: | $ 0 | per month |
| ☐ Car Loan: | $ 0 | per month |
| ☑ Other *(list type and amount)*: Path Lenden | $ 192.00 | per month |
| ☐ I have no expenses | | |

Total of all expenses: $ 482.00

This form shall not be modified. It may be supplemented with additional materials.

Enter the Case Number given by the Circuit Clerk: _____

In 4e, check all of the items owned by you and list the value of each item. Include the items owned by the people you support who live with you.

If you own real estate, include the total you owe on any mortgage.

e. I have the belongings listed below. This includes the belongings of the people I support who live with me. *(check all that apply)*

☑ Bank accounts and cash totaling: $98.69/c/s

☐ Home real estate, worth: $0

    The total I owe on my home mortgage is: $0

☐ Other real estate, not including the house I live in, worth: $0

    The total I owe on my other mortgage is: $0

☐ 1st vehicle worth: $0    The 1st vehicle is paid off: ☐ Yes ☐ No

☐ 2nd vehicle worth: $0    The 2nd vehicle is paid off: ☐ Yes ☐ No

☐ Other *(list items and value)*: _____ $_____

☐ None of the above

Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony.

The person who filled out this form must sign it.

Enter the complete current address and telephone number of the person who filled out this form.

If you are filling out this form for a minor or an incompetent adult, state your relationship.

I certify that everything above is true and correct to the best of my knowledge. I understand that making a false statement in this form could be perjury.

*Your Signature*

**Mattie Lomax**
*Print Your Current Name*

_____
*Relationship to Minor or Incompetent Adult (if applicable)*

9330 S. Wentworth Ave.,#41
*Street Address*

Chicago, IL 60620
*City, State, ZIP*

773-253-8206/c- 773-494-5245
*Telephone*

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Maffie Lomax

**Plaintiff/Petitioner**

No. **17M1302539**

City of Chicago

**Defendant/Respondent**

Calendar _____

# FEE WAIVED

### ORDER

This matter coming before the Court on an Application and Affidavit to Sue or Defend as an Indigent Person, the Court being fully advised in the premises, IT IS HEREBY ORDERED;

Pursuant to Supreme Court Rule 298 and 735 ILCS 5/5-105:

☑ The applicant is permitted to sue or defend without payment of fees, costs or charges. Fees for the reproduction of any documents contained in the court file or the electronic docket are not waived without specific order of court. The applicant may be ordered to pay any portion of the waived fees or costs out of a settlement or judgment resulting from this action.

☐ The application is denied for the following reason(s): _____

_____

_____

☐ Payment shall be: ☐ made by _____ OR ☐ deferred until _____ OR ☐ other _____

(date)                                    (date)

ENTERED:

**ENTERED**
DEC 08 2017
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY

Dated: Dec 8         2017

Judge: _____    Judge's No. _____

Payment should be made by cash, money order or cashier's check, directly to the Clerk of the Circuit Court of Cook County at the courthouse where you filed your application.

### DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Copy Distribution - White: 1. ORIGINAL - COURT FILE  Canary: 2. PETITIONER'S COPY  Pink: 3. RESPONDENT'S COPY

IN THE CIRCUIT COURT OF COOK COUNTY ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

MATTIE LOMAX,
Plaintiff,

CASE# **17 M 1 3 0 2 5**

v.

CITY OF CHICAGO DEPARTMENT
OF LAW CLAIMS UNIT, DBA/
LANDON HOWARD.
Defendants.

**NEGLIGENCE COMPLAINT OF INJURY**

I

Plaintiff MATTIE LOMAX is a resident of the City of Chicago, IL, Cook County of the State of Illinois.

II

Defendant is a municipal corporation organized under the laws of the State of Illinois and may be served with process through the CITY OF CHICAGO CLAIMS UNIT/ DBA LANDON HOWARD, 30 North LaSalle Street/ Room 800, Chicago, IL 60602.

III

On or about September 29, 2017 between the hours of 11:00 am and 11:30 am Plaintiff, Mattie Lomax was traveling on public transportation (CTA) bus 63rd street at 6301 S. Western Ave, Chicago, IL in which a damage up lifted concert from the ground on the South side of 63rd street and S. Western Ave., on a public sidewalk over a long period of time in such a manner that dangerous threat to the safety of the public in violation of the laws of the City of Chicago, of Cook County, State of Illinois.

IV

The Defendant had a duty under 10-28-560 the code of the City of liability for damages to the Plaintiff MATTIE LOMAX of the construction of the damage up lifted concert sidewalk and shall be held jointly responsible to the City for any and all damages to persons or property in consequence of any defect in the construction of such vault or for allowing the same or any portion thereof, to remain out of repair and such owner shall be required to keep such vault owner shall be required to keep such vault or coalhole its walls and converting in good order at all times.

V.

The Defendant negligently and carelessly allowed the damage of a hazard and threat to the safety of the public sidewalk in which Plaintiff fall and damages her right knee.

VI

On or about September 29, 2017 between the hours of 11:00 am and 11:30 am Plaintiff was carefully getting off the 63rd street bus walking left to cross S. Western Ave trip and fall on a damage sidewalk that was lifted up from the ground, suffering a fracture of her right knee and painful and serious injuries, all as a sole and proximate result of the hazardous conditions of the sidewalk caused by the negligence of the Defendant.

VII

Plaintiff did, through her own counsel, file a general liability personal injury claim in the form of verification by certification by certification stating therein that plaintiff was injured due to a fall on the public sidewalk adjacent to the premises at 6301 S. Western Ave, Chicago, IL because of the dangerous condition caused by the damage sidewalk and that as a result of said fall, suffer damage to her right knee, that plaintiff incurred medical attention in connection with this injury; that plaintiff is making claim for the injury, pain and suffering, and damages therefrom in the amount of $5,000. This verified claim was served/ hand deliver to the City of Chicago Department of Law claims unit 800/ 30 North LaSalle Street/ Room 800, Chicago, IL 60602. On October 6, 2017. In reply thereto, by certified mail posted October 12, 2017 counsel for Defendant was advised that the plaintiff claim is subject to a one year statute of limitations. The statute will expire on the one-year anniversary of the loss. On December 6, 2017 Plaintiff called the City of Chicago Department of Law claims unit and spoke with Landon Howard/ claims specialist and was advised that Her claim was denied.

VIII

As a direct and proximate result of her accident, Plaintiff has sustained a serious injury to her right knee and has incurred reasonable medical treatments as a result of the fall of the necessary treatment of said injury and reasonable future treatment.

IX

As a further direct and proximate result of defendant's negligence and careless act, plaintiff has sustained considerable pain to her right knee and will endure future pain and suffering in the amount of $5,000.

As a further direct and proximate result of Defendant's negligence and careless act, Plaintiff has sustained considerable pain in her right knee continually and will endure future pain and suffering in the amount of $5,000.

As a direct and proximate result of defendant's negligence and careless act, Plaintiff prays for judgment against defendant in the amount of $5,000

WHEREFORE, Plaintiff prays for judgment against Defendant in the amount of $5,000.

Date 12/8/2017

MATTIE LOMAX, PRO SE
9330 S. Wentworth Ave., #41
Chicago, IL 60620/
P.O. Box 21393
Chicago, IL 60621
Tele: 773-253-8206
Cell: 773-494-5245

**Motion - General Form** (This form replaces CCMD-39)                                    (2/24/05) CCG N702

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Mattie Lomax

**Plaintiff(s)**

v.                                                     No. 17M 1302539

City of Chicago Department
of Law Claims unit, DBA/
Landon Howard

**Defendant(s)**

TO: City of Chicago Department of Law Claim Unit DBA/
Landon Howard

**MOTION BY** DEFAULT        **FOR** Negligence Complaint
of Injury

Come now, This Motion of Default is to inform the
court that the City of Chicago Department of Law
Claim unit, DBA/Landon Howard has Ignored the
Plaintiff, Mattie Lomax of her filling a negligence
complaint of injure that occurred on September 29, 2017.
The Defendant was Served by the Court Sheriff's on
December 13, 2017 and no reply has been made.

**I (We) do hereby certify that a copy of this instrument was served upon all parties who have appeared
and have not previously been found by the Court to be in default for failure to plead.**

Dated: 01-16-2018                          Mattie Lomax

**Attorney Certification**

Atty. No.: _____
Name: Mattie Lomax
Atty. for: Mattie Lomax
Address: P.O. Box R1
City/State/Zip: Chicago
Telephone: 773-494-555____

DOROTHY BROWN
CLERK
CIVIL DIVISION
CLERK OF THE CIRCUIT COURT
2018 JAN 16 PM 1:09
FILED524

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Copy Distribution-White: 1. ORIGINAL-COURT FILE  Canary: 2. COPY 1  Pink: 3. COPY 2  Gold: 4. COPY 3

Order                        (Rev. 02/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Line#30
10:30

Mattie Lemay
_____
v.

No. 17 M 1 302539

City of Chicago Department
of Law Claims Unit, D/B/A **ORDER**
Landon Howard

This matter coming before this court on
the Plaintiff's Motion for Default and Defendant's
Motion to Dismiss city of chicago Department of Law
Claims Unit, D/B/A Landon Howard as an
improper party, all parties being present,
it is hereby ordered that Defendant's Motion
to Dismiss city of chicago Department of Law
Claims Unit, D/B/A Landon Howard is granted.
Defendant is dismissed with prejudice. Plaintiff
has 28 days to file an amended complaint.

Attorney No.: 90909
Name: Barbara Burke
Atty. for: D
Address: 30 N LaSalle St
City/State/Zip: Chicago, IL 60602
Telephone: 312 744 7150

**ENTERED:** Judge Catherine A. Schneider

JAN 26 2018

Dated:          Circuit Court - 2180

Judge                Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

FILED DATE: 7/24/2018 11:26 AM 2017L302539

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS COUNTY DEPARTMENT, FIRST MUNICIPAL DIVISION

MATTIE LOMAX,

Plaintiff,

v.

CITY OF CHICAGO, Municipal Corporation

Defendants.

RECEIVED

FEB 1 5 2018

DEPARTMENT OF LAW

No.  2017 M1 302539

DOROTHY BROWN CLERK OF THE CIRCUIT COURT CIVIL DIVISION

'18 FEB -6 AM 9:59 FILED-11

## MOTION/
## PLAINTIFF AMENDE COMPLAINT

Plaintiff, Mattie Lomax is a resident of the City of Chicago, IL, Cook County of

The State of Illinois, by, through its Pro Se litigant, Mattie Lomax, and pursuant to

735 ILCS 5/2-616), move to Amend Negligence Complaint of injury and to

Incorporate The City of Chicago, Municipal Corporation. Plaintiff states as follows:

### JURISDICTION AND VENUE

1.    The Court has jurisdiction over this action pursuant to (5 ILCS 140/ (2) (b).

2.    Venue is proper in Cook County pursuant to 5 ILCS § 140/11(c).

### PARTIES

3.    Plaintiff Mattie Lomax is a resident of Cook County of City of Chicago, IL

4.    Defendants are the CITY OF CHICAGO, Municipal Corporation,

a "public body" as that term is defined by 5 ILCS § 140/2(a), who is being sued in the

Official capacity as CITY OF CHICAGO, Municipal Corporation, as the term is defined

by 5 ILCS § 140/2(b).

FILED DATE: 7/24/2018 11:26 AM 2017L302539

Possession of the abutting premises, in front of which a coalhole or vault is constructed,

Shall be held jointly responsible to the city for any and all damages to persons or property

In consequence of any defect in the construction of such vault or coalhole, or for allowing

The same or any portion thereof, to remain out of repair, and such owner shall be

Required to keep such vault or coalhole, its walls and coverings, in good order at all times.

(See Exhibit-C)

11.    As a further direct and proximate result of defendant's negligence and

Careless act, Plaintiff has sustained considerable pain in her right knee and will endure

Future pain and suffering for $5,000.

WHEREFORE, Plaintiff prays for judgment against defendant for $5,000.

Dated   02 / 05 / 2018

Respectfully Submitted,

Mattie Lomax, pro se
P.O. Box
Chicago, IL 60621
Tel.: 773-359-4190
Cell.: 773-494-5245

Cc: CITY OF CHICAGO, Municipal Corporation,
     Edward Siskel, Corporation Counsel
     121 N. LaSalle St/ Suite 600
     Chicago, IL 60602

3

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

City of Chicago, a municipal corporation
121 N. LaSalle St./ Suite 600
Chicago, IL 60602

9590 9402 3410 7227 5532 50

2. Article Number (Transfer from service label)

7017 2400 0000 9816 1774

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____ ☐ Agent
☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

C. Graham                         2-15-18

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below:    ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
    Mail Restricted Delivery
    00)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

Mattie Lomax

v.

City of Chicago, Municipal Corp.

No. 2017 MI 302539

M1302539

## DISCOVERY CLOSURE AND ARBITRATION ORDER

Cause coming on to be heard and counsel having reviewed the file and finding all defendants having been served with Summons and Complaint.

IT IS HEREBY ORDERED AS FOLLOWS:

1. Any party not having initiated discovery must do so within adequate time per the rules to allow completion within the time specified in Paragraph No. 2 below or all discovery by that party thereafter is barred.

2. All discovery shall be completed by *March 15, 2018.*

4295 ☐ 3. Parties shall complete discovery in such time and schedule any depositions and all other activity so that all discovery will be completed by the DISCOVERY CLOSURE DATE.

7210 ☐ 4. The cause is assigned to Mandatory Arbitration.

5. Routine motions and motions of course shall be presented in Room 1501. All motions relating to the scheduling and conduct of mandatory arbitration hearing and all motions for sanctions under Supreme Court Rules 90 (g) through 95 shall be presented in Room 1501 only. The presentation and scheduling of motions in no way affect the scheduled date of the arbitration hearing.

Atty. No.: Pro Se

Name: Mattie Lomax

Atty. for: Mattie Lomax

Address: P.O. Box 21392

City/State/Zip: Chicago, IL 60621

Telephone: 773-354-4190

ENTERED:

Judge Catherine A. Schneider

MAR 15 2018

Circuit Court - 2130

Dated:

_____    _____
Judge                       Judge's No.

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

312-603-6132

*March 19, 2018*

*Case# 2017 MI 302539*

## M Gmail

Touch Of Color <akalomax@gmail.com>

## I need footage from a camera on 63rd st and western
2 messages

**Touch Of Color** <akalomax@gmail.com>
To: cdotfoia@cityofchicago.org

Mon, Mar 19, 2018 at 4:48 PM

Hi, my name is Mattie Lomax,

On September 29, 2017 between the hours of 11:00 am and 11:30 am I feild on the corner of 63rd and western on a big pic of concrete that was lifted from the ground and I hurt myself. Can I get photo of the addicedent

Mattie Lomax/
773-359-4190 **or cell** 773-494-5245

**3 attachments**



**Bus stop at 63rd and western.jpg**
910K



**side walk lifted up.jpg**
789K

📄 **s. western ave the other side.pdf**
710K

**cdotfoia** <cdotfoia@cityofchicago.org>
To: Touch Of Color <akalomax@gmail.com>

Tue, Mar 20, 2018 at 2:24 PM

Good Morning Mattie Lomax

This e-mail is in response to your FOIA request for video footage from the intersection of 63rd Western on Sept 29, 2017.

Streaming video is retained for 30 days. Your request is over the 30-day aging cycle. Please note that Section 11-208.6(g) of the Automated Traffic Law Enforcement Systems ("ATLES") statute states that:

UBMITTED - 8695686 - Mattie Lomax - 3/2/2020 3:53 PM

*June 25, 2018*

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## FIRST MUNICIPAL DISTRICT-MANDATORY ARBITRATION

**Lomax Mattie**

             **Plaintiff(s),**

**v.**

         No. 17-M1-302539

**City Chicago, Dept Law Claims, Howard Landon**
             **Defendant(s).**

FILED-62

18 JUN 25 AM 9:14

CLERK OF THE CIRCUIT COURT
CIVIL DIVISION
CLERK
DOROTHY BROWN

☒ **All parties participated in good faith.**

☐ _____ **did NOT participate in good faith based upon the following findings:** _____

_____

_____

_____

_____

**We the undersigned arbitrators, having been duly appointed and sworn (or affirmed), make the following award:**

    *In favor of Defendant*

_____

_____

_____

_____

_____

**In addition to the above award, court costs in the amount of:** *$0* _____ **itemized as follows:**

_____

**are awarded to** _____**.**

**The arbitration hearing began at** *8:40* **and ended at** *9:11* **on Monday June 25, 2018.**

## PLEASE LIST ALL PARTIES NOT PRESENT

**\*\*If a party is represented by counsel, he/she is deemed present.**

1. _____

2. _____

3. _____

4. _____

**Chairperson**

**Arbitrator**

**Arbitrator**

_____ **Dissents as to the Award.**

**19245 PLACED ON JUDGMENT ON AWARD OR ASSIGNMENT CALL ON July 30, 2018 at 9:00 AM IN ROOM 1501 OF THE RICHARD J. DALEY CENTER.**

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MANDATORY ARBITRATION PROGRAM
FIRST MUNICIPAL DISTRICT

PLAINTIFF: LOMAX MATTIE                ====>
                                       ====>
              V.                       ====>      CASE NUMBER: 17-M1-302539
                                       ====>
DEFENDANT: CITY CHICAGO                ====>      IN ARBITRATION


NOTICE OF AWARD

On the 25th day of June, 2018, the award of the arbitrators dated
June 25th, 2018, a copy of which is attached hereto, was filed and entered
of record in this Cause. A copy of this NOTICE has on this date been sent
regular mail, postage prepaid, addressed to each of the parties appearing
herein, at their last known address, or to their attorney of record.

Dated this 27th day of June, 2018.


DOROTHY BROWN
CLERK OF THE CIRCUIT COURT


DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

June 25, 2018

REPORT OF PROCEEDINGS                         June 25, 2018

                                                        Page 1

 1      STATE OF ILLINOIS )
                          ) SS.
 2      COUNTY OF C O O K )

 3               IN THE CIRCUIT COURT OF COOK COUNTY
                 MUNICIPAL DEPARTMENT-FIRST DISTRICT
 4

 5      MATTIE LOMAX,                    )
                                         )
 6                        Plaintiff,     )
                                         )
 7           vs.                         )  No. 17 M1 302539
                                         )
 8      CITY OF CHICAGO,                 )
                                         )
 9                        Defendants.    )

10

11

12               REPORT OF PROCEEDINGS at the arbitration

13      hearing of the above-entitled case, at 222 North

14      LaSalle Street, 13th Floor, Chicago, Illinois, on

15      June 25, 2018, at 8:31 a.m.

16

17

18

19

20           Reported by:  Suzanne Thalji, CSR, RMR, CRR

21

22

23

24

REPORT OF PROCEEDINGS

June 25, 2018

**Page 2**

```
 1  BEFORE:
 2      MR. THOMAS ROCHE
        MR. JASON WAGENER
 3      MS. SHEANA WOLTER
 4  APPEARANCES:
 5      MS. MATTIE LOMAX
 6          appeared pro se;
 7      EDWARD N. SISKEL, CORPORATION COUNSEL
        BY MS. BARBARA A. BURKE
 8      30 North LaSalle Street, Suite 800
        Chicago, Illinois  60602
 9      312.744.6958
        barbara.burke@cityofchicago.org
10
            on behalf of the Defendant.
11
    ALSO PRESENT:
12
        MS. JOERIKA RUSHING
13
14
15
16
17
18
19
20
21
22
23
24
```

**Page 3**

```
 1              I N D E X
 2
 3                                          PAGE
 4  OPENING STATEMENT by Ms. Lomax...........  7
    OPENING STATEMENT by Ms. Burke...........  9
 5  CLOSING STATEMENT by Ms. Lomax........... 35
    CLOSING STATEMENT by Ms. Burke........... 36
 6  CLOSING STATEMENT by Ms. Lomax........... 38
 7
    WITNESS                                  PAGE
 8
    MATTIE LOMAX
 9
        Examination by Arbitrator Roche      10
10      Cross-Examination by Ms. Burke       19
11
12            E X H I B I T S
13  DEFENDANT'S              FOR IDENTIFICATION
14  Exhibit 1                         31
15
16
17
18
19
20
21
22
23
24
```

**Page 4**

```
 1          ARBITRATOR ROCHE: Defense counsel, let's
 2  do introductions.
 3          MS. BURKE: Barbara Burke on behalf of the
 4  City.
 5          THE COURT: So you are Ms. Lomax, I take
 6  it?
 7          MS. LOMAX: Yes.
 8          ARBITRATOR ROCHE: All right. My name is
 9  Tom Roche. I will be the chair for this hearing.
10          MS. LOMAX: Excuse me. And this person?
11          ARBITRATOR ROCHE: We will get to that.
12  Don't worry.
13          MS. LOMAX: Okay. Sorry.
14          ARBITRATOR ROCHE: My name is Tom Roche. I
15  will let the other arbitrators introduce themselves.
16          MS. WOLTER: I'm Sheana Wolter.
17          MR. WAGENER: Jason Wagener.
18          ARBITRATOR ROCHE: Now, Ms. Lomax has
19  handed up this packet of stuff, Ms. Burke, that has
20  documents in it and a bunch of pictures and
21  pleadings and a motion to dismiss. I have a funny
22  feeling that this was not tendered under Rule 90(c).
23          MS. BURKE: That's correct.
24          ARBITRATOR ROCHE: That's correct? You did
```

**Page 5**

```
 1  not get a 90(c) notice of intent to offer these into
 2  evidence?
 3          MS. BURKE: That's correct.
 4          ARBITRATOR ROCHE: All right. They are not
 5  admissible. They are not presumptively admissible
 6  unless you send the notice. I am holding you to the
 7  same standard that I would hold an attorney, okay?
 8          MS. LOMAX: Okay.
 9          ARBITRATOR ROCHE: I know you might not
10  understand the rules as well, but Supreme Court Rule
11  90(c) says you can have all of these documents
12  presumptively admissible if you send them under
13  notice to the other side saying that I intend to
14  introduce these documents at the arbitration
15  hearing.
16          MS. LOMAX: Yes.
17          ARBITRATOR ROCHE: If you don't do that,
18  they are not presumptively admissible. Now, you can
19  try and lay the foundation and get them admitted
20  anyway, all right, but you need testimony to
21  establish a foundation.
22          MS. LOMAX: Okay. Now, the attorney
23  already have all these documents prior.
24          ARBITRATOR ROCHE: That doesn't matter.
```

FILED DATE: 7/24/2018 11:26 AM    20171302539

REPORT OF PROCEEDINGS

June 25, 2018

Page 6

1   What 90(c) says is that you specifically identify
2   the documents that you want to introduce at the
3   hearing, okay, not just everything, just the
4   documents that you want to introduce at the hearing.
5   And a lot of these are not documents that you would
6   introduce at the hearing. The complaint isn't a
7   document -- the motion to dismiss is not something
8   that you introduce at the hearing, okay?
9        MS. LOMAX: That wasn't my motion.
10       ARBITRATOR ROCHE: I know, but that's not
11  evidence. That's not something that you would put
12  in a 90(c) packet. You follow me? I say the 90(c)
13  packet isn't, you know, just for everything. It's
14  for the things that you want to use as evidence at
15  the hearing, and if you comply with the rule,
16  they're presumptively admissible, all right?
17       You didn't comply with the rule. So you
18  have to lay a foundation for anything you want to
19  get admitted into evidence.
20       MS. LOMAX: So the foundation are the
21  documents here before us this morning and which
22  everybody has a copy.
23       ARBITRATOR ROCHE: Here, take these back.
24       MS. LOMAX: Oh, you don't want those?

Page 7

1        ARBITRATOR ROCHE: Okay. We are going to
2   get going.
3        MS. LOMAX: Okay.
4        ARBITRATOR ROCHE: Ms. Lomax, I will give
5   you a chance to make an opening statement, if you
6   wish.
7             OPENING STATEMENT
8   BY MS. LOMAX:
9        Okay. On September the 29th, 2017, I had
10  just left my P.O. box to pay my P.O. box. Then
11  after I left there, then I got on the 63rd Street
12  bus, and I proceeded down to Western and 63rd. As I
13  got off the bus, okay, this big slab right here was
14  lifted off the ground without me even noticing it
15  (indicating). So then I fell, okay? When I fell, I
16  left a scar on myself, okay?
17       Now, there's cameras all over, all over
18  that area there, which I had emailed the defendant
19  asking them to retrieve the pictures of which I had
20  fell. They never respond, okay? So then I filed a
21  general liability claim against the City for their
22  negligence, okay? After that I went to the doctor,
23  okay? The doctor prescribed me a medication, okay?
24       So then after that -- now, there was

Page 8

1   appearance of damage to my left leg, okay? So then
2   I filed a claim with the City. Now, I named the
3   wrong person, Landon Howard. So that motion --
4   yeah. That motion was dismissed because I named the
5   wrong person.
6        So then after that then we had gone to
7   court. The defendant had filed a motion to dismiss,
8   okay, giving them a chance to answer --
9        ARBITRATOR ROCHE: I think you are kind of
10  going beyond what you need to do. This is all about
11  you tripped and fell over a piece of concrete at
12  63rd and Western after you got off the bus, right?
13       MS. LOMAX: Right, yes.
14       ARBITRATOR ROCHE: Okay. And you think the
15  City is liable for that?
16       MS. LOMAX: Right.
17       ARBITRATOR ROCHE: And you have a scar and
18  you had some medication?
19       MS. LOMAX: Right, and then I had -- I had
20  some X-rays.
21       ARBITRATOR ROCHE: I think I got it.
22       MS. LOMAX: I have some X-rays showing
23  that, okay?
24       ARBITRATOR ROCHE: Okay.

Page 9

1        MS. LOMAX: So then after that the
2   defendant -- well, that was January the 23rd of
3   2018. They filed a motion to dismiss, okay, for
4   improper parties because I had named Landon Howard
5   as the person, but it was the City.
6        ARBITRATOR ROCHE: This probably doesn't
7   matter about whether they're liable or not liable
8   but --
9        MS. LOMAX: Well, under the statute they
10  are liable.
11       ARBITRATOR ROCHE: We'll argue about that
12  later.
13       MS. LOMAX: Liability for damages.
14       ARBITRATOR ROCHE: Ms. Burke, what is your
15  side of the story here? Do you want to make an
16  opening statement?
17       MS. BURKE: Sure.
18            OPENING STATEMENT
19  BY MS. BURKE:
20       May it please the panel, Ms. Lomax, I'm
21  Barbara Burke. I represent the City of Chicago in
22  this matter, and in order for the plaintiff to prove
23  that the City was negligent, she is going to have to
24  overcome the six elements. And the first issue that

REPORT OF PROCEEDINGS                                      June 25, 2018

Page 10

1    she will not be able to overcome is that the
2    sidewalk slab differential as it seems as if she has
3    pictures ready to show, it was open and obvious;
4    second, there is absolutely no evidence that will be
5    presented today that the City had notice of any
6    defect with a sidewalk slab; third, that the
7    condition that Ms. Lomax claims that she fell on did
8    not present an unreasonable risk of harm.
9            And since she will not be able to prove all
10   six elements and specifically those three, the City
11   will be asking for a finding in its favor.
12       ARBITRATOR ROCHE:  Okay.  Ms. Lomax, you
13   are the only witness you have, I assume, true?  Do
14   you have any other witnesses besides yourself?
15       MS. LOMAX:  It's just myself and the
16   document --
17       ARBITRATOR ROCHE:  Okay.  We will go over
18   that.  Raise your right hand to be sworn.
19                  MATTIE LOMAX,
20   having been first duly sworn, was examined and
21   testified as follows:
22                  EXAMINATION
23   BY ARBITRATOR ROCHE:
24       Q    Okay.  Go ahead.  Start at the beginning.

Page 11

1       A    Okay.  At the very beginning -- this all
2    happened September the 29th, 2017.  I was leaving
3    the post office from paying my post office bill,
4    okay?  I proceeded down 63rd Street going towards
5    Western on a CTA bus, okay?  I got off the bus with
6    my bag, okay?  And I was pulling the bag, and I
7    just, boom, fell, fell down.
8            There was -- there is evidence -- there's
9    pictures.  There's cameras all over there and which
10   I emailed the people that's in charge of the
11   cameras --
12       Q    So you don't have the cameras?  You don't
13   have the pictures; do you?
14       A    Of when I fell?
15       Q    Yes.
16       A    No.
17       Q    Okay.
18       A    But I asked -- I sent this over to the
19   defendants asking them to retrieve those pictures.
20       Q    And if they didn't comply, that was
21   something you should have brought up with the judge
22   in court, okay?
23       A    Yes, sir.
24       Q    But you don't have the pictures.  So we are

Page 12

1    not going to see the pictures.  There is no use
2    talking about them really.  Go ahead.
3       A    Yes, sir.  So then after that I had gone to
4    the doctor.  He gave me medication.  Then he sent me
5    to get X-rays.  Then after that I filed a claim
6    against the City for negligence, and then after that
7    they denied me, okay?  So that's when I filed a
8    claim against the City for that fall for their
9    negligence under this statute.
10       Q    Okay.
11       A    Okay?
12       Q    What statute is it?
13       A    1028-560.
14       Q    All right.  What does that say?  I don't
15   have it memorized.
16       A    Okay.  Liability for damages, the owner and
17   the person in possession of the premises, okay, they
18   are liable.
19       Q    This is the sidewalk you are talking about?
20       A    Damages to persons or property, okay?  They
21   are liable.  I could show you this copy.
22       Q    No, that's okay.
23       A    Okay.  So everything is done under the
24   statute, and so the defendants came to the court,

Page 13

1    and they did a motion to dismiss.  So then I did a
2    plaintiff amended complaint in which they didn't
3    show up --
4       Q    Okay.
5       A    -- at court, okay?  Then the defendants
6    came back later on, and they did a motion for jury
7    trial.  They did appearances, jury demand, and that
8    was it.  There was nothing else -- no letters from
9    the City, nothing.  So here I am before this Court
10   bringing my case.
11       Q    What do you want?
12       A    5000.
13       Q    Okay.  How do you come up with that number?
14       A    That's the whole amount for small claims,
15   because I took this case to small claims.
16       Q    So you are asking for 5000 because you
17   think that's the most you can get?
18       A    Well, I probably can get more if there's a
19   jury trial, but, you know, I said 5000 because I
20   hurt myself, and here's documents showing that
21   there's damages.
22       Q    What do the documents show are damages?
23       A    Okay.  Severe narrowing of the bone on bone
24   appearances.  Here it is right here.  I could show

FILED DATE: 7/24/2018 11:26 AM    20171302539

REPORT OF PROCEEDINGS

June 25, 2018

Page 14

1  it to you.
2      Q  That's the X-ray report?
3      A  Yes, sir.
4      Q  And you think that's because you fell?
5      A  Yes. It was a hard -- it was a hard fall
6  in which there -- there was a scar left upon my
7  knee.
8      Q  Is it gone?
9      A  No. It's still here. The scar is still
10  here. I think I showed you pictures of that.
11      Q  We have disregarded all those pictures that
12  you handed up here, okay?
13      A  You don't want to see the pictures. Okay.
14  All right.
15      Q  You have a picture of the sidewalk, right?
16      A  Yes.
17      Q  Pull that out.
18      A  Okay. You want to see the picture of the
19  sidewalk. Okay. I have it right here. It's a
20  really nice color one.
21      Q  Who took that picture? Who took that
22  picture?
23      A  I took it from the computer.
24      Q  From the computer?

Page 15

1      A  From the computer, from the computer. I
2  went on Google Map, you see. I went on Google Map,
3  and then I focused on this sidewalk.
4      Q  You are sure that that's the exact same
5  sidewalk that you tripped on?
6      A  Exactly sidewalk, exactly sidewalk.
7      Q  Is there anything on the picture that can
8  identify the location of that sidewalk?
9      A  Yes. Here it is right here (indicating).
10      MS. BURKE: Objection to the document that
11  Ms. Lomax is showing.
12      ARBITRATOR ROCHE: Yes. Okay.
13      MS. LOMAX: Why would there be an objection
14  to that?
15      ARBITRATOR ROCHE: Well, because you didn't
16  introduce the documents.
17      Q  What document are you trying to show me
18  that identifies the location?
19      A  Here it is right here. Here is the
20  location and here is a -- here is the same location,
21  bus stop at 63rd and Western. Here it is right here
22  (indicating).
23      MS. BURKE: Objection. That's from --
24  BY ARBITRATOR ROCHE:

Page 16

1      Q  And that's from what, Google Maps?
2      MS. BURKE: No.
3      A  Google Map, this is Google Map.
4  BY ARBITRATOR ROCHE:
5      Q  Okay. All right. Anything else?
6      A  And what I was trying to get the defendants
7  to do, to retrieve the fall from the cameras,
8  because there's cameras all over the place there
9  and --
10      Q  And they all belong to the City of Chicago?
11      A  All belong to the City of Chicago and which
12  the person I had contact stated --
13      Q  Did you file a Freedom of Information Act
14  request or something like that?
15      A  Pardon?
16      Q  A Freedom of Information Act request or
17  FOIA, F-O-I-A.
18      A  No.
19      Q  No.
20      A  I contacted the people that's responsible
21  for the cameras, and they sent me this email stating
22  that the defendants had to retrieve the footage.
23      Q  So you sent them a subpoena?
24      A  Who?

Page 17

1      Q  The defendants.
2      A  No, I didn't send them a subpoena.
3      Q  How about a discovery request, a formal
4  request, interrogatories or something like that?
5  There's ways of getting information.
6      A  Well, they told me right here that they
7  could not give it to me.
8      Q  Okay. Okay. Anything else?
9      A  That's it.
10      Q  So you want $5000, and you don't have any
11  explanation as to why you should get $5000 other
12  than that's the most you can get?
13      A  Because I had hurt myself, because the City
14  is responsible for --
15      Q  So pain and suffering?
16      A  Of course.
17      Q  Okay.
18      A  Of course I went through that because it
19  shows right here (indicating).
20      Q  Anything else?
21      A  No, that's it.
22      ARBITRATOR ROCHE: Okay. All right.
23  Ms. Burke, you can cross-examine.
24      MS. BURKE: Just to clarify two things,

REPORT OF PROCEEDINGS

FILED DATE: 7/24/2018 11:26 AM 2017130253.9

**needed** 18:3

**negligence** 7:22 12:6,9 37:1

**negligent** 9:23 35:23 36:23

**nice** 14:20 23:1

**normal** 21:5

**notice** 5:1,6,13 10:5 36:11

**noticing** 7:14

**number** 13:13

**O**

**objecting** 28:14

**objection** 15:10, 13,23

**observe** 35:9

**obvious** 10:3

**October** 31:5 33:10 34:7,10

**offer** 5:1

**offered** 39:12

**office** 11:3 19:4,7, 13,23 23:8,12 31:3, 4

**open** 10:3

**opening** 7:5,7 9:16,18

**order** 9:22 34:21, 23 36:13

**ordinary** 36:18

**overcome** 9:24 10:1

**owner** 12:16

**P**

**P.O.** 7:10 23:23

**packet** 4:19 6:12, 13

**paid** 38:10

**pain** 17:15

**panel** 9:20

**paramedics** 21:13 27:18

**Pardon** 16:15

**part** 33:15

**parties** 9:4

**pay** 7:10 23:23 35:18,19 38:9,11

**paying** 11:3

**people** 11:10 16:20 21:8,19 36:17,20

**perfect** 37:5

**period** 37:16

**person** 4:10 8:3,5 9:5 12:17 16:12 36:3

**persons** 12:20

**pertains** 18:12

**photo** 32:3

**photograph** 37:11

**picture** 14:15,18, 21,22 15:7 31:14,21

**pictures** 4:20 7:19 10:3 11:9,13, 19,24 12:1 14:10, 11,13 25:8,9

**piece** 8:11

**place** 16:8

**plaintiff** 9:22 13:2 35:4 36:13

**pleadings** 4:21

**point** 21:14 33:12

**police** 24:10

**position** 37:17

**possession** 12:17

**post** 11:3 19:4,7, 13,23 23:8,11

**Pot** 29:23

**potentially** 28:18

**pour** 18:21

**premises** 12:17

**prescribe** 33:4

**prescribed** 7:23

**present** 10:8

**presented** 10:5 36:9,16

**preservation** 18:3

**presumptively** 5:5,12,18 6:16

**pretty** 25:19

**prevail** 37:14

**prior** 5:23 19:17 24:14

**proceeded** 7:12 11:4

**proceedings** 39:11

**property** 12:20 36:17,21

**protect** 36:22

**prove** 9:22 10:9 36:14

**proximate** 37:1

**pull** 14:17 38:22

**pulling** 11:6

**put** 6:11

**Q**

**question** 29:2

**questions** 34:14,17

**R**

**Raise** 10:18

**ready** 10:3

**realize** 25:14 36:21

**receipt** 37:20

**receive** 38:7

**recover** 36:13 37:18

**related** 34:12

**relevant** 28:18

**remarks** 36:5 39:5

**report** 14:2 24:8

**represent** 9:21

**represents** 32:5

**request** 16:14,16 17:3,4 18:1

**respond** 7:20

**responsible** 16:20 17:14 36:1

**rest** 35:14,16

**rests** 35:5

**retrieve** 7:19 11:19 16:7,22

**return** 18:5

**risk** 10:8 36:16,19

**Roche** 4:1,8,9,11, 14,18,24 5:4,9,17, 24 6:10,23 7:1,4 8:9,14,17,21,24 9:6, 11,14 10:12,17,23 15:12,15,24 16:4

17:22 18:8,14,18, 20,23 28:14,17,21, 23 29:1 31:20 34:15,19,22 35:1,4, 11,14,16 36:6 37:21,23 38:2,5,9, 14,16,24 39:6

**roll** 22:8

**route** 19:16

**rubber-soled** 24:19

**rule** 4:22 5:10 6:15,17

**rules** 5:10

**S**

**Sam** 29:21 30:2,4

**Sam's** 30:3

**scar** 7:16 8:17 14:6,9

**scene** 31:17

**seek** 18:10

**seeking** 37:19

**send** 5:6,12 17:2

**September** 7:9 11:2 18:2 19:18

**Severe** 13:23

**Sheana** 4:16

**shoes** 24:16,19

**shop** 28:20,21,22 29:3,5,8,16 30:5,10

**show** 10:3 12:21 13:3,22,24 15:17 31:13

**showed** 14:10 37:10

**showing** 8:22 13:20 15:11

**shows** 17:19

REPORT OF PROCEEDINGS

June 25, 2018
Index: side..Zeh

FILED DATE: 7/24/2018 11:26 AM 2017L302539

**side** 5:13 9:15 22:16 25:10 29:17, 20 32:15

**sides** 35:16

**sidewalk** 10:2,6 12:19 14:15,19 15:3,5,6,8 18:17 22:20 27:12 35:23 36:3,12,16

**sidewalks** 18:15 37:5

**sir** 11:23 12:3 14:3

**sixth** 36:24

**slab** 7:13 10:2,6 25:9,15 36:12

**slabs** 37:4

**small** 13:14,15 18:11 38:1

**smoking** 22:3

**smooth** 27:11

**Sneakers** 24:18

**sought** 34:10

**South** 24:3 31:8, 14 32:3,13,16 37:10,11

**specialist** 39:2

**specifically** 6:1 10:10 18:13

**spell** 33:5

**spend** 29:7 32:24

**spent** 30:12 33:2

**standard** 5:7 29:22

**standing** 27:17

**start** 10:24 20:23

**started** 30:22,23

**stated** 16:12

**statement** 7:5,7 9:16,18 35:20 36:7 38:19

**stating** 16:21

**statute** 9:9 12:9, 12,24 18:12 36:4

**statutory** 37:15

**step** 26:24 27:6

**stepped** 21:15 25:2

**steps** 25:3,6

**stop** 15:21 25:5,6, 9 27:3 28:4

**story** 9:15

**street** 7:11 11:4 19:6 21:2 22:17 27:4 28:3 30:4 32:8 37:8

**stuff** 4:19

**subpoena** 16:23 17:2

**suffering** 17:15

**sunny** 22:24

**Supreme** 5:10

**sworn** 10:18,20

**system** 24:6

**T**

**talking** 12:2,19

**tendered** 4:22

**testified** 10:21 37:3

**testimony** 5:20

**thing** 31:18,19,22

**things** 6:14 17:24 30:23

**thought** 27:11

**time** 20:11 23:15, 21 37:16

**times** 23:17

**tire** 29:10,11 30:15

**today** 10:5 36:10

**told** 17:6

**Tom** 4:9,14

**treatment** 33:23

**trial** 13:7,19

**tripped** 8:11 15:5

**true** 10:13

**turned** 19:23 20:22 21:12 39:4

**U**

**um-hum** 23:14 31:19,22

**understand** 5:10

**unreasonable** 10:8 36:16

**V**

**vaulted** 18:15,17

**vaults** 18:13

**video** 21:9

**view** 22:20 26:12

**W**

**Wagener** 4:17

**Wal-mart** 29:21 30:3

**walk** 26:20,21 30:9

**walked** 25:6 28:3

**walking** 20:23 21:5 27:4

**wanted** 27:18

**ways** 17:5

**wearing** 24:16

**week** 33:7

**Wentworth** 24:3

**West** 19:6 20:5,6

**Western** 7:12 8:12 11:5 15:21 20:5,6 21:1,6 24:9, 23 25:1 27:17 28:6, 22 29:16,17,18 30:7 31:8,15 32:3,13,16 37:10,11

**witnessed** 31:10

**witnesses** 10:14 35:12

**Wolter** 4:16

**word** 38:17

**worry** 4:12

**wow** 25:15

**wrong** 8:3,5

**X**

**X-RAY** 14:2

**X-RAYS** 8:20,22 12:5 31:2 33:12

**Y**

**year** 23:18

**Z**

**Zeh** 37:13

REPORT OF PROCEEDINGS                    June 25, 2018

**Page 18**

1  Ms. Lomax did make a FOIA request on March 19, 2018.
2  The accident happened on September 29, 2017. Any
3  preservation would have needed to be done within 30
4  days from the date of the incident, and since it was
5  beyond, the CDOT FOIA department did return her
6  email indicating that after 30 days there's no
7  longer any information.
8        ARBITRATOR ROCHE: Okay.
9        MS. BURKE: Ms. Lomax did not go to the
10 Court and seek leave to have any formal discovery in
11 the small claims case. And then just to also
12 clarify, the statute that was cited pertains
13 specifically to coal hole or vaults.
14       ARBITRATOR ROCHE: To what?
15       MS. BURKE: Coal hole or vaulted sidewalks.
16 And there's been no evidence that this was a coal
17 hole or vaulted sidewalk.
18       ARBITRATOR ROCHE: Coal hole?
19       MS. BURKE: Yes.
20       ARBITRATOR ROCHE: Like where they used to
21 pour coal down in the old days, right?
22       MS. BURKE: Yes.
23       ARBITRATOR ROCHE: All right. Do you want
24 to cross-examine Ms. Lomax?

**Page 19**

1        MS. BURKE: Yes.
2                   CROSS-EXAMINATION
3  BY MS. BURKE:
4        Q   Ms. Lomax, where is the post office that
5  you were coming from that day?
6        A   I was coming from 611 West 63rd Street in
7  Chicago. It's a post office right there, and that's
8  in Englewood.
9        Q   Have you been to that location before?
10       A   Yes.
11       Q   Have you taken a bus to that location
12 before?
13       A   To the post office.
14       Q   Yes.
15       A   Yes.
16       Q   And did you take the same route that you
17 did the day of your alleged fall prior to
18 September 29, 2017?
19       A   I've been there before.
20       Q   And you've gotten off at that same
21 location --
22       A   Not off there, no. I have just came to
23 that location, the post office, and then I turned
24 around and went back the other way.

**Page 20**

1        Q   What is the exact address of the location
2  where you fell?
3        A   The exact location was at --
4        Q   The address.
5        A   -- 6301 West Western Avenue.
6        Q   Is there a business near 6301 West Western
7  Avenue?
8        A   Right, but it's closed.
9        Q   What is the name of it?
10       A   It's a food mart there, but it's closed.
11 At the time when I was there, it was closed. As you
12 can see, when I got off the bus -- oh, here it is.
13 When I got off the bus, you can see it's closed, and
14 that was around by 11 so --
15       Q   What is the name of it?
16       A   It's F & G Liquors and Food Mart, right
17 there on the corner as I got off the bus.
18       Q   How many feet were you from the curb when
19 you fell?
20       A   From the curb? Maybe what, two, because
21 the bus drops you off and then you just get off,
22 maybe like two feet, and then once I had turned to
23 start walking, boom, I just fell completely down.
24       Q   And where were you looking when you fell?

**Page 21**

1        A   I was looking towards Western trying to
2  cross the street and catch the next bus down to
3  95th.
4        Q   Were you in a hurry?
5        A   I was just walking normal. I was on my way
6  down to 95th and Western.
7        Q   Was there somebody in front of you?
8        A   There was people there that helped me, and
9  all of that can be seen on the video.
10       Q   Was there somebody immediately in front of
11 you when you got off the bus?
12       A   There was a lady that turned around and
13 asked me did I want her to call the paramedics.
14       Q   I'm not even getting to the point where you
15 fell. When you stepped off the bus, was there
16 anybody in front of you?
17       A   No.
18       Q   Was there anybody behind you?
19       A   People were getting off the bus.
20       Q   Okay. Was there anybody to your right?
21       A   No, I don't think so. It was just
22 basically me. I just got off the bus and bam.
23       Q   Okay.
24       A   I had my --

REPORT OF PROCEEDINGS

June 25, 2018

Page 22

1    Q   Were you distracted at all?
2    A   No.
3    Q   Were you smoking?
4    A   No.
5    Q   Did you have anything in your hands?
6    A   I had my bag.
7    Q   Okay.
8    A   I had a little bag that you roll
9    (indicating).
10   Q   And then what about -- was that in your
11   right hand?
12   A   Right, in my right hand.
13   Q   And did you have anything in your left
14   hand?
15   A   No.
16   Q   And did you see the bus on the other side
17   of the street?
18   A   No.
19   Q   So nobody was in front of you blocking your
20   view of the sidewalk --
21   A   No.
22   Q   -- is that correct?
23   A   No.
24   Q   And was it sunny that day?

Page 23

1    A   It was a nice day.
2    Q   Okay. So was the area well lit? Could you
3    see around you?
4    A   It was daytime; yes.
5    Q   Okay. And you're familiar with that area
6    because you had been in that area before, correct?
7    A   No, I'm not very familiar with that area.
8    Q   How often do you go to your post office
9    box?
10   A   Oh, maybe twice a month.
11   Q   Okay. And how long have you had the post
12   office box at that location?
13   A   Only a few months, only a few months,
14   um-hum.
15   Q   So at the time that you were there the day
16   of your fall, you had been there probably like at
17   least maybe six times?
18   A   During that year?
19   Q   Yes.
20   A   Yeah, probably so.
21   Q   Okay. So it's not the first time that you
22   had been there?
23   A   No. I was there to pay my P.O. box.
24   Q   Okay. And you live in the city; is that

Page 24

1    correct?
2    A   Yes.
3    Q   At 9330 South Wentworth Avenue?
4    A   Right.
5    Q   And so you live in the city. Are you aware
6    of the City's 311 system?
7    A   The 311 -- yes.
8    Q   And did you ever call 311 to report any
9    defects at 63rd and Western --
10   A   I went to the police --
11   Q   -- before you fell?
12   A   No.
13   Q   Are you aware of anybody that called 311
14   prior to the date of your fall?
15   A   No.
16   Q   What kind of shoes were you wearing that
17   day?
18   A   Sneakers.
19   Q   So flat rubber-soled shoes?
20   A   Right.
21   Q   Was there any construction in the area?
22   A   No, I didn't see any construction.
23   Q   And were you closer to Western, or were you
24   closer to 63rd?

Page 25

1    A   Western.
2    Q   Okay. Now, when you stepped off the bus,
3    how many steps did you take before you fell?
4    A   About two because he left you right
5    there -- he left me off right at the bus stop, right
6    at the bus stop, and once I walked down two steps,
7    bam, I fall, because as you can see, as you can see
8    on the pictures -- oh, yeah. As you can see on the
9    pictures, the bus stop is right there, and that slab
10   is lifting up right at the -- at that side right
11   here (indicating).
12   Q   So how did you know that that height
13   differential was what you fell on?
14   A   I didn't realize it until after I fell. I
15   said, wow, that slab is lifted off the ground.
16   Q   Did you ever measure it?
17   A   No.
18   Q   How high do you think that that is?
19   A   Oh, it's pretty high. It's lifted up
20   off -- out of the ground.
21   Q   Do you think it's like an inch high?
22   A   More than an inch. It is up. It's very --
23   Q   Would it be less than two inches?
24   A   Oh, yeah. It's really -- two inches is

REPORT OF PROCEEDINGS

June 25, 2018

**Page 26**

1 like -- no, no. It was really up and it --
2     Q   And how long was it?
3     A   How long was it?
4     Q   Yes.
5     A   As it is right here (indicating). I don't
6 know.
7     Q   Like a foot, two feet, three feet?
8     A   Oh, let's see. Maybe five feet.
9     Q   Okay.
10     A   Yeah, five feet. It's very long.
11     Q   Okay. And was there anything covering it
12 that day that would block your view of it?
13     A   No.
14     Q   Okay. So when you went back and looked at
15 it, did it look like something that you should
16 avoid?
17     A   Excuse me?
18     Q   When you went back after you fell and
19 looked at it, did it look like something that you
20 should not walk over?
21     A   Well, yes. No one should walk over that.
22     Q   And would you have had another way to catch
23 the bus that you were trying to catch if you didn't
24 step on that height differential?

**Page 27**

1     A   No.
2     Q   There was no other way to get to the bus
3 stop that you were trying to get to that day?
4     A   Walking across the street to get the other
5 bus.
6     Q   But did you have to step on that height
7 differential to get to the bus?
8     A   I didn't even know it was there. I didn't
9 even know it was there.
10     Q   Okay. Because you weren't looking down?
11     A   No. I thought it was just a smooth
12 sidewalk.
13     Q   Okay. Now, when you fell, can you describe
14 how your body moved?
15     A   I fell down. Everything came, you know --
16 the bag and everything down. And then there was a
17 couple ladies that was standing at Western and 63rd.
18 They wanted me to call the paramedics, and I says
19 no, no, you know, because I'm trying to get
20 somewhere.
21     Q   And how long do you think that you were at
22 that location?
23     A   Oh, I don't know. Maybe about 15 minutes.
24     Q   Okay. And then --

**Page 28**

1     A   Fifteen minutes.
2     Q   -- how did you leave that location?
3     A   I got up and walked across the street and
4 went to the bus stop.
5     Q   And then where did you take the bus to?
6     A   To 95th and Western.
7     Q   And is that when you went to the clinic?
8     A   No, no, no. I went to another location I
9 was going to.
10     Q   Okay. So where did you go once you got off
11 the bus?
12     MS. LOMAX: That's irrelevant where I went.
13 That's absolutely irrelevant.
14     ARBITRATOR ROCHE: So you are objecting?
15     MS. LOMAX: She is asking me where did I
16 go --
17     ARBITRATOR ROCHE: I know. I know. I
18 think it's potentially relevant where you were
19 going. Where were you going?
20     MS. LOMAX: I was going to the bike shop.
21     ARBITRATOR ROCHE: Bike shop?
22     MS. LOMAX: Bike shop on 95th and Western.
23     ARBITRATOR ROCHE: Okay. Go ahead.
24     MS. LOMAX: I had --

**Page 29**

1     ARBITRATOR ROCHE: You answered the
2 question. Another question.
3     MS. LOMAX: I was going to the bike shop.
4 BY MS. BURKE:
5     Q   Did you end up going to the bike shop?
6     A   Right.
7     Q   And then how long did you spend at the bike
8 shop?
9     A   Not very long. I think I was getting my
10 tire fixed, getting a tire fixed.
11     Q   Okay. Did you have the tire with you?
12     A   Yes.
13     Q   Okay.
14     A   Right.
15     Q   So at that intersection at 95th and
16 Western, where is the bike shop?
17     A   It's on the left side of Western, at 95th
18 and Western.
19     Q   Okay.
20     A   It's on the left side like across from like
21 Sam Club, Wal-Mart, you know, that area right there.
22     Q   Yes. So you have Standard Bank on one
23 corner, the fitness center on the other, Pot Belly
24 on another, and then there is a clinic?

FILED DATE: 7/24/2018 11:26 AM 20171302539

REPORT OF PROCEEDINGS                                    June 25, 2018

**Page 30**

1    A   No. I'm more back towards like -- what's
2   that, Sam Club? I was closer to Sam Club.
3    Q   So Sam's Club, Wal-Mart.
4    A   Yes, Sam Club, and then across the street
5   is the bike shop. There's a bike shop there.
6    Q   Okay. So that's a couple blocks down
7   Western, is that correct, down on --
8    A   That's before -- that's before 95th.
9    Q   Okay. So then did you walk to the bike
10  shop after you got off the bus?
11   A   Yes.
12   Q   Okay. And then you spent about an hour
13  there; is that correct?
14   A   No, not an hour, no, no, no. They fixed my
15  tire on my bicycle. So what, 20 minutes?
16   Q   And then where did you go?
17   A   And then from there I went home.
18   Q   Okay. How did you get home?
19   A   Bus.
20   Q   Okay. And then after you go home, then
21  what do you do?
22   A   And that's when I started feeling --
23  feeling funny, you know. Things started to hurt.
24  So that's when I called the doctor, and I went to

**Page 31**

1   the doctor, and that's when he gave me medication,
2   and that's when he sent me to get X-rays.
3    Q   Okay. So do you go to the doctor's office?
4    A   I went to the doctor office a few days
5   later, I think it was. That was October. October
6   the 6th I had went.
7    Q   And then where is that doctor located?
8    A   He's on Western, 9415 South Western Avenue
9   in Chicago, 60643.
10   Q   Are you aware of anyone that witnessed the
11  accident?
12   A   Only witness are the cameras. The cameras
13  would show you where I fell.
14   Q   Now, I have a picture of 6301 South
15  Western.
16   A   Yes.
17   Q   Does this scene look familiar to you?
18   A   Right. It's the same thing that I have,
19  um-hum. It's the same thing.
20       ARBITRATOR ROCHE: Just look at her
21  picture.
22   A   Okay. Okay. Yes, um-hum, same thing.
23       (Defendant's Exhibit 1 was
24       marked for identification.)

**Page 32**

1       MS. BURKE: Okay. So I am moving to mark
2   this as Defendant's Exhibit 1, which is a Google
3   photo of 6301 South Western as defendant indicated
4   that that --
5    Q   This accurately represents the location
6   where you fell; is that correct?
7    A   No, that's not the location. Across the
8   street is the location.
9    Q   Okay.
10   A   See what I'm saying? See, those are
11  different (indicating).
12   Q   Well, in your complaint you said you fell
13  at -- you said you fell at 6301 South Western,
14  correct?
15   A   Right, this side right here (indicating).
16   Q   And this is 6301 South Western, correct?
17   A   Yes, 6301.
18   Q   Okay. Thank you. So you go to the doctor.
19  What is your doctor's name?
20   A   Cole, Dr. Cole.
21   Q   Dr. Cole, C-o --
22   A   Coleman, Cedric Coleman, C-e-d-r-i-c
23  Coleman.
24   Q   Okay. And how long did you spend with the

**Page 33**

1   doctor that day?
2    A   Oh, I spent at least about an hour there.
3    Q   And what kind of medication did Dr. Coleman
4   prescribe you?
5    A   He gave me meloxicam. Let me spell it.
6   M-e-l-o-x-i-c-a-m.
7    Q   And this is about a week after you fell, is
8   that correct, because it's --
9    A   That was on the 6th.
10   Q   Of October?
11   A   Yeah, right, and this happened on the 29th.
12   Q   Okay. And then at that point are X-rays
13  taken?
14   A   Yes.
15   Q   Of what body part?
16   A   The legs.
17   Q   Both legs, right and left?
18   A   Yes.
19   Q   And aside from the medication, did anything
20  else happen that day?
21   A   No.
22   Q   Did you ever see any other doctors for any
23  other kind of treatment?
24   A   No.

REPORT OF PROCEEDINGS

June 25, 2018

FILED DATE: 7/24/2018 11:26 AM   2017L302539

Page 34

1　Q　Have you ever been involved in any other
2　accident?
3　A　No.
4　Q　Have you ever injured your left knee
5　before?
6　A　No.
7　Q　Since October --
8　A　This was the right. It was the right knee,
9　not the left.
10　Q　Since October 6th of 2017, have you sought
11　any other medical attention up to this day for
12　injuries related to this incident?
13　A　No.
14　　　MS. BURKE: No further questions.
15　　　ARBITRATOR ROCHE: All right. Is there
16　anything that you feel that you need to clear up
17　based on her questions to you?
18　　　MS. LOMAX: Yes.
19　　　ARBITRATOR ROCHE: What?
20　　　MS. LOMAX: I would like to know why didn't
21　they order the footage of the fall?
22　　　ARBITRATOR ROCHE: Okay. Anything else?
23　　　MS. LOMAX: Why did they not order the
24　footage? That's it.

Page 35

1　　　ARBITRATOR ROCHE: Okay. So you don't have
2　any other evidence, right?
3　　　MS. LOMAX: No.
4　　　ARBITRATOR ROCHE: All right. Plaintiff
5　rests.
6　　　Ms. Burke, is this a witness you have here
7　or an associate?
8　　　MS. BURKE: This is Joerika. She is our
9　711. So she came with to observe, and soon she is
10　going to be doing these arbs as well.
11　　　ARBITRATOR ROCHE: Okay. So you don't have
12　any witnesses?
13　　　MS. BURKE: No.
14　　　ARBITRATOR ROCHE: You rest?
15　　　MS. BURKE: Yes.
16　　　ARBITRATOR ROCHE: Okay. Both sides rest.
17　　　Ms. Lomax, you can make a closing argument
18　now. Why should the City pay you and how much
19　should they pay you and why?
20　　　　　CLOSING STATEMENT
21　BY MS. LOMAX:
22　　　Okay. The closing argument -- because they
23　were negligent on the sidewalk. The sidewalk was
24　lifted off -- out of the ground, and it was high,

Page 36

1　okay? Now, the City is responsible for that, for
2　any falls or any damages -- well, not damages. Any
3　injuries to a person that fall on their sidewalk
4　under the Illinois statute of liability, and that's
5　my closing remarks.
6　　　ARBITRATOR ROCHE: Okay. Ms. Burke?
7　　　　　CLOSING STATEMENT
8　BY MS. BURKE:
9　　　As you heard the evidence presented to you
10　today, there is absolutely no evidence that the City
11　had any notice, either actual or constructive, of
12　any sidewalk slab height differential in this
13　matter. In order for the plaintiff to recover, she
14　has to prove six elements under Jury Instruction
15　120.08, and they are: There was a condition on the
16　sidewalk which presented an unreasonable risk of
17　harm to people on the property; that the City knew
18　or in the exercise of ordinary care should have
19　known of both the condition and the risk; three,
20　that the City could reasonably expect that people on
21　the property would not discover or realize the
22　danger or would fail to protect themselves from such
23　danger; four, that the City was negligent; fifth,
24　that she was injured; and then, sixth, that the

Page 37

1　City's negligence was the proximate cause of any of
2　her injuries.
3　　　Ms. Lomax testified that this condition was
4　very long and that the slabs weren't flush. The
5　City does not have to keep the sidewalks in perfect
6　condition. She also indicated that she was not
7　looking at the ground. She was looking across the
8　street.
9　　　She also indicated that she fell at
10　6301 South Western. However, when I showed her the
11　photograph of 6301 South Western, she indicated that
12　that's not where she fell. She fell at a different
13　location, and under Zeh you can't change the
14　location without -- you can't prevail if the
15　location changes. And it's beyond the statutory
16　time period to fix it.
17　　　So the City's position is that the City
18　should recover, and we have costs in the amount of
19　$192 that the City is seeking in this matter. And I
20　have a receipt if you would like to see that.
21　　　ARBITRATOR ROCHE: Itemized as how?
22　　　MS. BURKE: Appearance and jury demand.
23　　　ARBITRATOR ROCHE: Well, what's what?
24　　　MS. BURKE: Well, they're lumped together

REPORT OF PROCEEDINGS

June 25, 2018

FILED DATE: 7/24/2018 11:26 AM    20171302539

Page 38

1   for small claims.
2          ARBITRATOR ROCHE:  So it's just --
3          MS. BURKE:  It's just 192, appearance and
4   jury demand.
5          ARBITRATOR ROCHE:  Okay.
6          MS. LOMAX:  They never sent me any of that,
7   your Honor.  I didn't receive anything like that
8   from her.
9          ARBITRATOR ROCHE:  Well, they have to pay a
10  fee just like you paid a fee, right?  How much did
11  you pay to file the lawsuit?
12         MS. LOMAX:  Oh, my lawsuit was filed
13  indigent because I'm low income.
14         ARBITRATOR ROCHE:  So nothing?
15         MS. LOMAX:  Right.
16         ARBITRATOR ROCHE:  Okay, fine.  Okay.  Now,
17  Ms. Lomax, you get the last word.  Anything else you
18  want to add?
19              CLOSING STATEMENT
20  BY MS. LOMAX:
21         I just want to know why didn't the City
22  pull the footage and, second, Howard -- Landon
23  Howard had gone out to the location --
24         ARBITRATOR ROCHE:  Who?

Page 39

1          MS. LOMAX:  Howard -- Landon Howard.
2   That's the claim specialist that denied me my claim.
3   They had gone out there to witness, and then he
4   turned around and denied the claim.  So that's my
5   closing remarks.
6          ARBITRATOR ROCHE:  Okay.  All right.  Thank
7   you.  Get your documents together.  You will get an
8   award within, I'm sure, 30 minutes or less.
9          MS. BURKE:  Thank you.
10         MS. LOMAX:  Thank you, your Honor.
11         (Which were all the proceedings had or
12          offered at said arbitration of the
13          above-entitled case.)
14
15
16
17
18
19
20
21
22
23
24

Page 40

1   STATE OF ILLINOIS )
                     )  SS.
2   COUNTY OF C O O K )
3
4          I, SUZANNE THALJI, CSR, do hereby certify
5   that I reported in shorthand the proceedings had at
6   the arbitration aforesaid, and that the foregoing is
7   a true, complete, and accurate transcript of the
8   proceedings at said arbitration as appears from my
9   stenographic notes so taken and transcribed by me on
10  this 17th day of July, 2018.

                    Suzanne Thalji

                    Certified Shorthand Reporter

18  CSR No. 084-002337

REPORT OF PROCEEDINGS

June 25, 2018
Index: $192..city

| | | | | |
|---|---|---|---|---|
| **$** | **611** 19:6 | **alleged** 19:17 | **B** | 24 38:3 39:9 |
| | **6301** 20:5,6 31:14 32:3,13,16,17 37:10,11 | **amended** 13:2 | | **bus** 7:12,13 8:12 11:5 15:21 19:11 20:12,13,17,21 21:2,11,15,19,22 22:16 25:2 5,6,9 26:23 27:2,5,7 28:4, 5,11 30:10,19 |
| **$192** 37:19 | | **amount** 13:14 37:18 | **back** 6:23 13:6 19:24 26:14,18 30:1 | |
| **$5000** 17:10,11 | **63rd** 7:11,12 8:12 11:4 15:21 19:6 24:9,24 27:17 | **appearance** 8:1 37:22 38:3 | **bag** 11:6 22:6,8 27:16 | |
| **1** | **6th** 31:6 33:9 34:10 | **appearances** 13:7,24 | **bam** 21:22 25:7 | **business** 20:6 |
| **1** 31:23 32:2 | | **arbitration** 5:14 39:12 | **Bank** 29:22 | **C** |
| **1028-560** 12:13 | **7** | **ARBITRATOR** 4:1,8,11,14,18,24 5:4,9,17,24 6:10,23 7:1,4 8:9,14,17,21, 24 9:6,11,14 10:12, 17,23 15:12,15,24 16:4 17:22 18:8,14, 18,20,23 28:14,17, 21,23 29:1 31:20 34:15,19,22 35:1,4, 11,14,16 36:6 37:21,23 38:2,5,9, 14,16,24 39:6 | **Barbara** 4:3 9:21 | **C-E-D-R-I-C** 32:22 |
| **11** 20:14 | **711** 35:9 | | **based** 34:17 | |
| **120.08** 36:15 | | | **basically** 21:22 | **C-O** 32:21 |
| **15** 27:23 | **9** | | **beginning** 10:24 11:1 | **call** 21:13 24:8 27:18 |
| **19** 18:1 | | | **behalf** 4:3 | **called** 24:13 30:24 |
| **192** 38:3 | **90(c)** 4:22 5:1,11 6:1,12 | | **Belly** 29:23 | **cameras** 7:17 11:9,11,12 16:7,8, 21 31:12 |
| **2** | **9330** 24:3 | | **belong** 16:10,11 | |
| **20** 30:15 | **9415** 31:8 | | **bicycle** 30:15 | **care** 36:18 |
| **2017** 7:9 11:2 18:2 19:18 34:10 | **95th** 21:3,6 28:6, 22 29:15,17 30:8 | **arbitrators** 4:15 | **big** 7:13 | **case** 13:10,15 18:11 39:13 |
| **2018** 9:3 18:1 | | **arbs** 35:10 | **bike** 28:20,21,22 29:3,5,7,16 30:5,9 | |
| **23rd** 9:2 | **A** | **area** 7:18 23:2,5,6, 7 24:21 29:21 | **bill** 11:3 | **catch** 21:2 26:22, 23 |
| **29** 18:2 19:18 | **above-entitled** 39:13 | **argue** 9:11 | **block** 26:12 | **CDOT** 18:5 |
| **29th** 7:9 11:2 33:11 | **absolutely** 10:4 28:13 36:10 | **argument** 35:17, 22 | **blocking** 22:19 | **Cedric** 32:22 |
| | **accident** 18:2 31:11 34:2 | **associate** 35:7 | **blocks** 30:6 | **center** 29:23 |
| **3** | **accurately** 32:5 | **assume** 10:13 | **body** 27:14 33:15 | **chair** 4:9 |
| **30** 18:3,6 39:8 | **Act** 16:13,16 | **attention** 34:11 | **bone** 13:23 | **chance** 7:5 8:8 |
| **311** 24:6,7,8,13 | **actual** 36:11 | **attorney** 5:7,22 | **boom** 11:7 20:23 | **change** 37:13 |
| **5** | **add** 38:18 | **Avenue** 20:5,7 24:3 31:8 | **box** 7:10 23:9,12, 23 | **charge** 11:10 |
| **5000** 13:12,16,19 | **address** 20:1,4 | **avoid** 26:16 | **bringing** 13:10 | **Chicago** 9:21 16:10,11 19:7 31:9 |
| **6** | **admissible** 5:5, 12,18 6:16 | **award** 39:8 | **brought** 11:21 | **cited** 18:12 |
| **60643** 31:9 | **admitted** 5:19 6:19 | **aware** 24:5,13 31:10 | **bunch** 4:20 | **city** 4:4 7:21 8:2, 15 9:5,21,23 10:5, 10 12:6,8 13:9 16:10,11 17:13 23:24 24:5 35:18 |
| | **ahead** 10:24 12:2 28:23 | | **Burke** 4:3,19,23 5:3 9:14,17,19,21 15:10,23 16:2 17:23,24 18:9,15, 19,22 19:1,3 29:4 32:1 34:14 35:6,8, 13,15 36:6,8 37:22, | |

FILED DATE: 7/24/2018 11:26 AM 20171302539

FILED DATE: 7/24/2018 11:26 AM   20171302539

REPORT OF PROCEEDINGS

36:1,10,17,20,23
37:5,17,19 38:21

**City's** 24:6 37:1,
17

**claim** 7:21 8:2
12:5,8 39:2,4

**claims** 10:7
13:14,15 18:11 38:1

**clarify** 17:24
18:12

**clear** 34:16

**clinic** 28:7 29:24

**closed** 20:8,10,
11,13

**closer** 24:23,24
30:2

**closing** 35:17,20,
22 36:5,7 38:19
39:5

**Club** 29:21 30:2,3,
4

**coal** 18:13,15,16,
18,21

**Cole** 32:20,21

**Coleman** 32:22,
23 33:3

**color** 14:20

**complaint** 6:6
13:2 32:12

**completely**
20:23

**comply** 6:15,17
11:20

**computer** 14:23,
24 15:1

**concrete** 8:11

**condition** 10:7
36:15,19 37:3,6

**construction**
24:21,22

**constructive**
36:11

**contact** 16:12

**contacted** 16:20

**copy** 6:22 12:21

**corner** 20:17
29:23

**correct** 4:23,24
5:3 22:22 23:6 24:1
30:7,13 32:6,14,16
33:8

**costs** 37:18

**counsel** 4:1

**couple** 27:17
30:6

**court** 4:5 5:10 8:7
11:22 12:24 13:5,9
18:10

**covering** 26:11

**cross** 21:2

**CROSS-
EXAMINATION**
19:2

**cross-examine**
17:23 18:24

**CTA** 11:5

**curb** 20:18,20

**D**

**damage** 8:1

**damages** 9:13
12:16,20 13:21,22
36:2

**danger** 36:22,23

**date** 18:4 24:14

**day** 19:5,17 22:24
23:1,15 24:17 26:12
27:3 33:1,20 34:11

**days** 18:4,6,21
31:4

**daytime** 23:4

**defect** 10:6

**defects** 24:9

**defendant** 7:18
8:7 9:2 32:3

**defendant's**
31:23 32:2

**defendants**
11:19 12:24 13:5
16:6,22 17:1

**Defense** 4:1

**demand** 13:7
37:22 38:4

**denied** 12:7 39:2,
4

**department**
18:5

**describe** 27:13

**differential** 10:2
25:13 26:24 27:7
36:12

**discover** 36:21

**discovery** 17:3
18:10

**dismiss** 4:21 6:7
8:7 9:3 13:1

**dismissed** 8:4

**disregarded**
14:11

**distracted** 22:1

**doctor** 7:22,23
12:4 30:24 31:1,4,7
32:18 33:1

**doctor's** 31:3
32:19

**doctors** 33:22

**document** 6:7
10:16 15:10,17

**documents**
4:20 5:11,14,23 6:2,
4,5,21 13:20,22
15:16 39:7

**drops** 20:21

**duly** 10:20

**E**

**elements** 9:24
10:10 36:14

**email** 16:21 18:6

**emailed** 7:18
11:10

**end** 29:5

**Englewood**
19:8

**establish** 5:21

**evidence** 5:2
6:11,14,19 10:4
11:8 18:16 35:2
36:9,10

**exact** 15:4 20:1,3

**EXAMINATION**
10:22

**examined** 10:20

**Excuse** 4:10
26:17

**exercise** 36:18

**Exhibit** 31:23
32:2

**expect** 36:20

**explanation**
17:11

**F**

**F-O-I-A** 16:17

**fail** 36:22

**fall** 12:8 14:5 16:7
19:17 23:16 24:14
34:21 36:3

**falls** 36:2

**familiar** 23:5,7
31:17

**favor** 10:11

**fee** 38:10

**feel** 34:16

**feeling** 4:22
30:22,23

**feet** 20:18,22 26:7,
8,10

**fell** 7:15,20 8:11
10:7 11:7,14 14:4
20:2,19,23,24 21:15
24:11 25:3,7,13,14
26:18 27:13,15
31:13 32:6,12,13
33:7 37:9,12

**Fifteen** 28:1

**file** 16:13 38:11

**filed** 7:20 8:2,7 9:3
12:5,7 38:12

**finding** 10:11

**fine** 38:16

**fitness** 29:23

**fix** 37:16

**fixed** 29:10 30:14

**flat** 24:19

**flush** 37:4

**focused** 15:3

**FOIA** 16:17 18:1,5

**follow** 6:12

**food** 20:10,16

**foot** 26:7

**footage** 16:22
34:21,24 38:22

**formal** 17:3 18:10

**foundation**
5:19,21 6:18,20

**Freedom** 16:13,
16

**front** 21:7,10,16
22:19

REPORT OF PROCEEDINGS

FILED DATE: 7/24/2018 11:26 AM   20171302539

**funny** 4:21 30:23

**G**

**gave** 12:4 31:1 33:5
**general** 7:21
**give** 7:4 17:7
**giving** 8:8
**Google** 15:2 16:1,3 32:2
**ground** 7:14 25:15,20 35:24 37:7

**H**

**hand** 10:18 22:11, 12,14
**handed** 4:19 14:12
**hands** 22:5
**happen** 33:20
**happened** 11:2 18:2 33:11
**hard** 14:5
**harm** 10:8 36:17
**heard** 36:9
**hearing** 4:9 5:15 6:3,4,6,8,15
**height** 25:12 26:24 27:6 36:12
**helped** 21:8
**high** 25:18,19,21 35:24
**hold** 5:7
**holding** 5:6
**hole** 18:13,15,17, 18
**home** 30:17,18,20

**Honor** 38:7 39:10
**hour** 30:12,14 33:2
**Howard** 8:3 9:4 38:22,23 39:1
**hurry** 21:4
**hurt** 13:20 17:13 30:23

**I**

**identification** 31:24
**identifies** 15:18
**identify** 6:1 15:8
**Illinois** 36:4
**immediately** 21:10
**improper** 9:4
**inch** 25:21,22
**inches** 25:23,24
**incident** 18:4 34:12
**income** 38:13
**indicating** 7:15 15:9,22 17:19 18:6 22:9 25:11 26:5 32:11,15
**indigent** 38:13
**information** 16:13,16 17:5 18:7
**injured** 34:4 36:24
**injuries** 34:12 36:3 37:2
**Instruction** 36:14
**intend** 5:13
**intent** 5:1
**interrogatories** 17:4

**intersection** 29:15
**introduce** 4:15 5:14 6:2,4,6,8 15:16
**introductions** 4:2
**involved** 34:1
**irrelevant** 28:12, 13
**issue** 9:24
**Itemized** 37:21

**J**

**January** 9:2
**Jason** 4:17
**Joerika** 35:8
**judge** 11:21
**jury** 13:6,7,19 36:14 37:22 38:4

**K**

**kind** 8:9 24:16 33:3,23
**knee** 14:7 34:4,8
**knew** 36:17

**L**

**ladies** 27:17
**lady** 21:12
**Landon** 8:3 9:4 38:22 39:1
**lawsuit** 38:11,12
**lay** 5:19 6:18
**leave** 18:10 28:2
**leaving** 11:2
**left** 7:10,11,16 8:1 14:6 22:13 25:4,5

29:17,20 33:17 34:4,9
**leg** 8:1
**legs** 33:16,17
**letters** 13:8
**liability** 7:21 9:13 12:16 36:4
**liable** 8:15 9:7,10 12:18,21
**lifted** 7:14 25:15, 19 35:24
**lifting** 25:10
**Liquors** 20:16
**lit** 23:2
**live** 23:24 24:5
**located** 31:7
**location** 15:8,18, 20 19:9,11,21,23 20:1,3 23:12 27:22 28:2,8 32:5,7,8 37:13,14,15 38:23
**Lomax** 4:5,7,10, 13,18 5:8,16,22 6:9, 20,24 7:3,4,8 8:13, 16,19,22 9:1,9,13, 20 10:7,12,15,19 15:11,13 18:1,9,24 19:4 28:12,15,20, 22,24 29:3 34:18, 20,23 35:3,17,21 37:3 38:6,12,15,17, 20 39:1,10
**long** 23:11 26:2,3, 10 27:21 29:7,9 32:24 37:4
**longer** 18:7
**looked** 26:14,19
**lot** 6:5
**low** 38:13
**lumped** 37:24

**M**

**M-E-L-O-X-I-C-A-M** 33:6
**make** 7:5 9:15 18:1 35:17
**Map** 15:2 16:3
**Maps** 16:1
**March** 18:1
**mark** 32:1
**marked** 31:24
**mart** 20:10,16
**matter** 5:24 9:7, 22 36:13 37:19
**MATTIE** 10:19
**measure** 25:16
**medical** 34:11
**medication** 7:23 8:18 12:4 31:1 33:3,19
**meloxicam** 33:5
**memorized** 12:15
**minutes** 27:23 28:1 30:15 39:8
**month** 23:10
**months** 23:13
**morning** 6:21
**motion** 4:21 6:7,9 8:3,4,7 9:3 13:1,6
**moved** 27:14
**moving** 32:1

**N**

**named** 8:2,4 9:4
**narrowing** 13:23

July 30, 2018

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT – FIRST MUNICIPAL DISTRICT

LINE # _____

Lomax Mattie

        v.

City of Chicago, Dept. Law
Claims, Howard Landon

)
)
)
)
) CASE NO. 17-M1 30539
)
)
)
)
)
)

### TRIAL ROOM ASSIGNMENT ORDER

IT IS HEREBY ORDERED AS FOLLOWS:

1.    All Discovery remains closed in accordance with Supreme Court Rule 89.

2.    The cause is assigned to Room _____ on _____ at 9:00 a.m., at which time an Intake and Case Management Conference pursuant to Supreme Court Rule 218 will be conducted and the trial date will be set.

3.    All parties pro se, trial lawyers or other appropriate representatives familiar with the facts of the case and authorized to settle the case are required to be present.

4.    All motions relating to the conduct of the previous mandatory arbitration shall be presented in Room 1501. All other motions shall be presented in the assigned trial room, and all dispositive motions and initial motions in limine shall be presented at or before the Conference.

Atty. No.: Pro Se litigant
Name: Mattie Lomax
Attorney for: Mattie Lomax
City/Zip: Chicago IL 60617
Telephone: 773-414-5295

Judge John A. O'Meara

Enter   JUL 30 2018

Circuit Court - 2164

Judge         Judge's No.

Case# 2017 MI 302539

M Gmail

Touch Of Color <akalomax@gmail.com>

# I need footage from a camera on 63rd st and western
2 messages

**Touch Of Color** <akalomax@gmail.com>
To: cdotfoia@cityofchicago.org

Mon, Mar 19, 2018 at 4:48 PM

Hi, my name is Mattie Lomax,

On September 29, 2017 between the hours of 11:00 am and 11:30 am I feild on the corner of 63rd and western on a big pic of concrete that was lifted from the ground and I hurt myself. Can I get photo of the addicedent

Mattie Lomax/
773-359-4190 or cell 773-494-5245

**3 attachments**



**Bus stop at 63rd and western.jpg**
910K



**side walk lifted up.jpg**
789K

📄 **s. western ave the other side.pdf**
710K

**cdotfoia** <cdotfoia@cityofchicago.org>
To: Touch Of Color <akalomax@gmail.com>

Tue, Mar 20, 2018 at 2:24 PM

Good Morning Mattie Lomax

This e-mail is in response to your FOIA request for video footage from the intersection of 63rd Western on Sept 29, 2017.

Streaming video is retained for 30 days. Your request is over the 30-day aging cycle. Please note that Section 11-208.6(g) of the Automated Traffic Law Enforcement Systems ("ATLES") statute states that:

Aug. 23, 2018

**4217**

**Order (Continuance)** (This form replaces CCM1 0606 and CCMD 623-2 thru 6)                    (1/25/05) CCM N606

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## MUNICIPAL DEPARTMENT/ _____1st_____ DISTRICT

Nettie Lemay

**Plaintiff(s)**

v.

No. _17 M1 302539_

City of Chicago

**Defendant(s)**

### CONTINUANCE ORDER

This matter having come before this Court for  ☑ status   ☐ pretrial   ☐ trial   _on pending motion for summary judgment_

☐ other: _in take, if necessary_

the Court being fully advised;

IT IS HEREBY ORDERED that this matter is continued to _____10/4_____, 2018
(date)

at ___9:00___ a.m./p.m. in Room __1504__ for:

☐ status (4406)   ☐ pretrial (4405)   ☐ trial (4482)

☑ other: _Status on MSJ and in-take, if necessary_

(Please print)

Atty. No.: _90___

Name: _Darp___

Attorney for: _____

Address: _30 N __lle Ste Ste800_

City/State/Zip: _Chicago, Il 606__

Telephone: _312 744 0___

**ENTERED:**

Dated: _____

ENTERED
Judge Raymond Funderburk
AUG 23 2018
Circuit Court - 1619

_____        _____
**Judge**                **Judge's No.**

### DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
Copy Distribution - White: 1. ORIGINAL - COURT FILE  Canary: 2. COPY  Pink: 3. COPY

Order                                                          (Rev. 02/24/05) CCG-N002

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

(5)

Mattie Kamal

v.                                        No. 2017 M1 302539

City of Chicago, et al

**ORDER**

This matter coming before this court on the Defendant's motion for Summary Judgment, due notice being given, all parties being present, it is hereby ordered that Defendant's motion for Summary Judgment is hereby granted as the condition is found to be open and obvious. City's request for costs is denied. This matter is dismissed with prejudice and off call.

Attorney No.: 90909

Name: Barbara Burke

Atty. for: △

Address: 30 N. LaSalle St. Ste 800

City/State/Zip: Chicago, IL 60602

Telephone: 312.744.0597

Judge Catherine A. Schneider

**ENTERED:** OCT 01 2019

Circuit Court - 2180

Dated: _____, _____

_____        _____
Judge                          Judge's No.

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

1-18-2132

## IN THE APPELLATE COURT OF ILLINOIS
## FIRST JUDICIAL DISTRICT

| | |
|---|---|
| MATTIE LOMAX,<br>Plaintiff-Appellant, | )<br>)<br>) |
| v. | )<br>) |
| CITY OF CHICAGO, et al,<br>Defendant-Appellee. | )<br>)<br>) |

### ORDER

This cause having come before the Court on Plaintiff-Appellant's Application for Waiver of Court Fees, and the Court being advised in the premises;

**IT IS HEREBY ORDERED**: Plaintiff-Appellant's Application for Waiver of Court Fees is **ALLOWED / DENIED**. Fees are only waived in the Appellate Court.

Enter:

_Mychass W. Delort_
Justice

**ORDER ENTERED**

DEC – 5 2018

**APPELLATE COURT, FIRST DISTRICT**

_____
Justice

_____
Justice

*July 18, 2019*

2019 IL App (1st) 182132-U

FOURTH DIVISION
July 18, 2019

No. 1-18-2132

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| MATTIE LOMAX, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 17 M1 302539 |
| | ) | |
| CITY OF CHICAGO, a Municipal Corporation, | ) | Honorable Catherine A. Schneider, Judge Presiding. |
| Defendant-Appellee. | ) | |

PRESIDING JUSTICE McBRIDE delivered the judgment of the court.
Justices Reyes and Burke concurred in the judgment.

**ORDER**

¶ 1   *Held*: The trial court properly granted summary judgment in favor of the City because no legal duty existed where plaintiff was injured due to an open and obvious condition on the sidewalk.

¶ 2   Plaintiff Mattie Lomax, appearing *pro se*, filed a small claim action based on allegations of negligence against defendant the City of Chicago (City). Plaintiff alleged that she was injured when she fell on a raised sidewalk slab in September 2017 near West 63rd Street and South Western Avenue after she exited a Chicago Transit Authority (CTA) bus. The parties proceeded



No. 1-18-2132

to arbitration and an award was entered in favor of the City. Plaintiff rejected the arbitration award in the trial court. The City then filed a motion for summary judgment, which the trial court granted.

¶ 3    On appeal, plaintiff, still appearing *pro se*, argues that the trial court erred in granting summary judgment because the distraction exception applies to the open and obvious nature of the raised sidewalk slab.

¶ 4    In December 2017, plaintiff filed her initial small claims negligence complaint against the City of Chicago Law Department Claims Unit and a named claims specialist. In January 2018, the City filed a motion to dismiss the complaint for naming an improper party because the City's law department is not an entity that can be sued separate and apart from the City. The trial court granted the motion and allowed plaintiff 28 days to file an amended complaint.

¶ 5    In February 2018, plaintiff filed her amended complaint against the City in the small claims division of the trial court and alleged negligence. Her complaint alleged that on or about September 29, 2017, between 11 and 11:30 a.m. Plaintiff was exiting the CTA 63rd Street bus at 6301 South Western Avenue. She was

> "carefully getting off the 63rd Street bus walking left to cross S. Western Ave trip [*sic*] and fall on damage sidewalk that was lifted up from the ground, suffering a facture of her right knee and painful and serious injuries, all as a sole and proximate result of the hazardous conditions of the sidewalk cause by the negligence of the Defendant."

She claimed she sustained a "serious injury to her right knee and has incurred reasonable medical treatments as a result of the fall of the necessary treatment of said injury and reasonable future treatment." Plaintiff sought an award of $5,000.

2

No. 1-18-2132

¶ 6    Plaintiff attached several exhibits to her complaint. She included photocopied pictures of
the sidewalk as well as a street view image of 6301 South Western Avenue in Chicago from
Google Maps with a handwritten notation including an arrow stating, "Here is where the
sidewalk was lifted from the ground." Plaintiff also attached her claim form for the City claims
unit. Plaintiff further attached her medical records from Advocate Trinity Hospital in Chicago.
The records were dated October 6, 2017. The first record related to an injury of plaintiff's right
knee and the clinical indication was "contusion about one week ago. Pain." Multiple x-rays of
plaintiff's right knee were taken and showed no fracture. The second record involved plaintiff's
left shoulder and an indication of "left shoulder pain following injury." Multiple x-rays were
taken and showed no fracture, dislocation or significant abnormality.

¶ 7.   The case was set for mandatory arbitration. An arbitration hearing took place on June 25,
2018. Plaintiff was the only witness at the hearing. She testified that on September 29, 2017, she
was on 63rd Street going towards Western Avenue while on a CTA bus. She exited the bus and
was pulling her bag. She then "just, boom, *** fell down." Plaintiff tried to show the arbitrators
a picture of the sidewalk she obtained from Google Maps. Plaintiff stated that the address where
she fell was 6301 South Western Avenue. She estimated that she was two feet from the curb
when she fell. She had exited the bus and "had turned to start walking, boom [she] just fell
completely down." Plaintiff "was looking towards Western trying to cross the street and catch
the next bus down to 95th." She was walking normally and not in a hurry. When asked if she was
distracted, plaintiff answered, "No." Plaintiff had a small rolling bag in her right hand. No one
was in front of her blocking her view of the sidewalk and it was daytime and a "nice day." She
was wearing rubber-soled "sneakers."

3

No. 1-18-2132

¶ 8     Plaintiff testified that she was "not very familiar with that area," and estimated she had been to that location six times that year. Plaintiff admitted that she was aware of the City's 311 system. She did not report any defects at 63rd and Western before she fell and was not aware of anyone else contacting 311 prior to her fall. She did not see any construction.

¶ 9     Plaintiff stated that she was closer to Western. She estimated that she took two steps after she exited the bus before she fell. She did not realize there was a height differential in the sidewalk slab until she fell. She did not measure it, but estimated it was more than one inch and less than two inches lifted from the ground and it was approximately five feet long. There was nothing covering the sidewalk that would block her view. When she looked at the sidewalk after she fell, she stated that it looked like something she should avoid because "[n]o one should walk over that." Plaintiff admitted she was not looking down and thought "it was just a smooth sidewalk." When she fell, everything came "down." Two women standing nearby asked if she wanted them to call the paramedics and plaintiff said no. Plaintiff estimated she was at that location approximately 15 minutes. Plaintiff got up, crossed the street, and proceeded to take the Western bus southbound. Plaintiff went to her original planned destination, a bike shop to fix a tire. She then went home by bus.

¶ 10     After she got home, plaintiff started "feeling funny," and "things started to hurt." She called the doctor and she went to get x-rays a few days later. She has not sought any further treatment. She had not injured her right knee before or been involved in any other accident.

¶ 11     Following the hearing, the arbitrators entered an award in favor of the City. In July 2018, plaintiff filed a rejection of that arbitrators' award and requested trial. On July 24, 2018, the City filed a motion for summary judgment, arguing that the sidewalk condition was open and obvious and that the City did not have actual or constructive notice of the condition. In August 2018,

4

No. 1-18-2132

plaintiff filed a motion to strike the City's motion for summary judgment, and in September 2018, the City filed a response to plaintiff's motion. In October 2018, plaintiff filed another motion to strike the City's motion for summary judgment and also requested summary judgment in her favor. In her motion, plaintiff for the first time argued for a finding of willful and wanton conduct. She also asserted that the distraction exception applied to the open and obvious doctrine regarding the sidewalk where she fell. On October 1, 2018, the trial court granted the City's motion for summary judgment and found the sidewalk condition to be open and obvious.

¶ 12    This appeal followed in compliance with Illinois Supreme Court Rule 303 (eff. Jan. 1, 2015) with a timely notice of appeal filed on October 1, 2018. Accordingly, this court has jurisdiction of this appeal under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994).

¶ 13    On appeal, plaintiff argues that the trial court erred in granting summary judgment because the distraction exception applied when she encountered the open and obvious condition of the sidewalk. Plaintiff also contends that the City improperly raised section 2-201 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/2-201 (West 2016)) in their summary judgment motion for the first time. However, the City did not raise any argument related to section 2-201 of the Tort Immunity Act in the trial court, nor has it raised such an argument on appeal. Accordingly, we disregard any argument by plaintiff related to this section of the Tort Immunity Act.

¶ 14    Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, indicate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016). We review cases

5

No. 1-18-2132

involving summary judgment *de novo*. *Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 349 (1998).

¶ 15    "To state a cause of action for negligence, a complaint must allege facts that establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 430 (2006). "The question of the existence of a duty is a question of law, and in determining whether a duty exists, the trial court considers whether a relationship existed between the parties that imposed a legal obligation upon one party for the benefit of the other party." *Sameer v. Butt*, 343 Ill. App. 3d 78, 85 (2003). In contrast, "whether a defendant breached the duty and whether the breach was the proximate cause of the plaintiff's injuries are factual matters for the jury to decide, provided there is a genuine issue of material fact regarding those issues." *Marshall*, 222 Ill. 2d at 430. " 'In the absence of a showing from which the court could infer the existence of a duty, no recovery by the plaintiff is possible as a matter of law and summary judgment in favor of the defendant is proper.' " *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 13 (quoting *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 411 (1991)).

¶ 16    Under section 3-102(a) of the Tort Immunity Act, a local public entity has "the duty to exercise ordinary care to maintain its property in a reasonably safe condition" for use by intended and permitted users. 745 ILCS 10/3-102(a) (West 2016). There are four factors to consider in a duty analysis: "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Bruns*, 2014 IL 116998, ¶ 14. "A legal duty refers to a relationship between the defendant and the plaintiff such that the law imposes on the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Choate v.*

6

No. 1-18-2132

*Indiana Harbor Belt Railroad Co.*, 2012 IL 112948, ¶ 22.

¶ 17    Generally, under the open and obvious rule, " 'a party who owns or controls land is not required to foresee and protect against an injury if the potentially dangerous condition is open and obvious.' " *Bruns*, 2014 IL 116998, ¶ 16 (quoting *Rexroad v. City of Springfield*, 207 Ill. 2d 33, 44 (2003)). "The open and obvious rule is also reflected in section 343A of the Restatement (Second) of Torts, which this court has adopted." *Id.* "Under section 343A, a 'possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them.' " *Id.* (quoting Restatement (Second) of Torts § 343A, at 218 (1965)). " 'Obvious' means that 'both the condition and the risk are apparent to and would be recognized by a reasonable [person], in the position of the visitor, exercising ordinary perception, intelligence, and judgment.' " *Id.* (quoting Restatement (Second) of Torts § 343A cmt. b, at 219 (1965)). "Whether a dangerous condition is open and obvious may present a question of fact," but "where no dispute exists as to the physical nature of the condition, whether the dangerous condition is open and obvious is a question of law." *Id.* ¶ 18. However, "[t]he existence of an open and obvious danger is not an automatic or *per se* bar to the finding of a legal duty on the part of a defendant." *Id.* ¶ 19.

¶ 18    On the day of her fall, plaintiff had exited the 63rd Street bus and walked approximately two steps before she tripped over the raised sidewalk slab. She testified at the arbitration hearing that it was daytime and nothing was blocking her view of the sidewalk. Plaintiff does not dispute that the raised sidewalk slab was open and obvious. She submitted photographs of the slab and described it as being raised more than one inch, but less than two inches and approximately five feet long. However, she contends that she was distracted and did not see the open and obvious condition of the sidewalk.

7

No. 1-18-2132

¶ 19    The distraction exception to the open and obvious rule "applies ' "where the possessor of land has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." ' " *Bruns*, 2014 IL 116998, ¶ 20 (quoting *Sollami v. Eaton*, 201 Ill. 2d 1, 15 (2002), quoting Restatement (Second) of Torts § 343A cmt. f, at 220 (1965)). "[T]he distraction exception will only apply where evidence exists from which a court can infer that plaintiff was actually distracted." *Id.* ¶ 22.

¶ 20    In *Bruns*, the plaintiff was going to an appointment at an eye clinic when she stubbed her toe on a raised crack on a city-maintained sidewalk, causing her to fall. *Id.* ¶ 4. At the time of her fall, the plaintiff was not looking down at her feet, but was looking toward the clinic's steps and door. *Id.* The plaintiff admitted that she had seen the crack on prior visits and was certain that she saw it on the day of her fall. *Id.* The plaintiff filed a negligence action against the city. *Id.* The city filed its motion for summary judgment arguing that the sidewalk defect was open and obvious, and that it was therefore not required to foresee and protect against injuries resulting from the defect. *Id.* In answer to the motion, the plaintiff argued that she was distracted because she was looking at the clinic door, and that it was reasonable for the city to foresee that a person could become distracted in this manner. *Id.* ¶ 7. In granting summary judgment, the trial court concluded that the defect was open and obvious and that the distraction theory was inapplicable. *Id.* ¶ 8. The appellate court reversed the grant of summary judgment. *Id.* ¶ 13.

¶ 21    The supreme court reversed the appellate court, finding that that the distraction theory only applies when there is evidence from which the court can infer that the plaintiff was actually distracted, and that the "mere fact of looking elsewhere does not constitute a distraction." *Id.* ¶ 22. The supreme court also noted the circumstances in which the distraction exception had

8

No. 1-18-2132

been found applicable. *Id.* ¶¶ 24-27; see *Ward v. Kmart Corp.*, 136 Ill.2d 132, 153-54 (1990) (Kmart sold the plaintiff bulky merchandise that obscured his view and prevented him from walking into a five-foot concrete post outside the entrance of the store); *Deibert v. Bauer Brothers Construction Co.*, 141 Ill. 2d 430, 439-40 (1990) (plaintiff fell in a heavy equipment tire rut when exiting a bathroom because he was looking upward to ensure that workers were not throwing debris down from a balcony as the workers had historically done on this project); *American National Bank & Trust Co. of Chicago v. National Advertising Co.*, 149 Ill. 2d 14, 28-29 (1992) (billboard painter who came into contact with a high-voltage power line hanging above a walkrail that ran the length of the billboard was distracted by having to carefully watch where to place his feet on the walkrail); *Rexroad v. City of Springfield*, 207 Ill. 2d 33, 46 (2003) (student manager of a football team instructed by a coach to retrieve a helmet in the locker room, and forced to return using a different path because the original access gate was locked, was focused on returning the helmet to the coach and was distracted from a large hole in this alternate path to the field).

¶ 22    Here, plaintiff contends that she was distracted "while getting off a public bus pulling a bag." However, at the arbitration hearing, plaintiff admitted that she was looking toward Western because she planned to cross to catch a bus. She has not identified any hazard that prevented her from seeing the raised sidewalk slab. As the *Bruns* court held, the "mere fact of looking elsewhere does not constitute a distraction." *Bruns*, 2014 IL 116998, ¶ 22. This case is similar to the circumstances present in *Bruns* like the plaintiff there, plaintiff in this case was looking at Western rather than the sidewalk. In rejecting the plaintiff's distraction claim, the supreme court in *Bruns* observed:

9

No. 1-18-2132

> "In the absence of evidence of an actual distraction, we disagree with plaintiff that
> it was objectively reasonable for the City to expect that a pedestrian, generally
> exercising reasonable care for her own safety, would look elsewhere and fail to
> avoid the risk of injury from an open and obvious sidewalk defect. The plaintiff's
> position is contrary to the very essence of the open and obvious rule: because the
> risks are obvious, the defendant ' "could not reasonably be expected to anticipate
> that people will fail to protect themselves from any danger posed by the
> condition." ' *Bucheleres* [v. *Chicago Park District*], 171 Ill. 2d [435,] 448 [1996]
> (quoting *Ward*, 136 Ill. 2d at 148). Were we to conclude, as plaintiff does, that
> simply looking elsewhere constitutes a legal distraction, then the open and
> obvious rule would be upended and the distraction exception would swallow the
> rule."

¶ 23     We also find the circumstances in the present case analogous to the facts presented in
*Negron v. City of Chicago*, 2016 IL App (1st) 143432. In that case, the plaintiff was walking on
the south side of Division Street in Chicago. There was a crowd in the area. She heard someone
yell behind her and she looked over her shoulder as she continued to walk. A few steps later, the
plaintiff tripped over a section of sidewalk that had a two-inch height differential from the
adjacent slabs. The weather was clear, it was still light out, and nothing obstructed her view of
the sidewalk. She fell and fractured both elbows. *Id.* ¶¶ 1-5. The plaintiff then filed a negligence
action against the City and alleged that she was injured because the City failed to maintain the
sidewalk. *Id.* ¶ 6. The city moved for summary judgment. *Id.* After arguments, the trial court
granted summary judgment, finding that the sidewalk defect was open and obvious and the
plaintiff's claimed distraction exception was not reasonably foreseeable. *Id.* ¶ 10.

10

No. 1-18-2132

¶ 24    On appeal, the reviewing court concluded that the distraction exception was not

applicable to the plaintiff's case. The court noted that the City "did not create or contribute to the

distraction that caused" the plaintiff's accident. *Id.* ¶ 20. "A defendant that either creates or

contributes to a distraction will typically have reason to know it exists." *Id.* "Conversely, where a

defendant bears no responsibility for a distraction, courts frequently find that the defendant could

not reasonably have foreseen it." *Id.* The court then rejected the plaintiff's contentions that a

distraction was reasonable foreseeable. *Id.* ¶¶ 22-26. "None of [the plaintiff's] arguments

persuades us that the city could reasonably have anticipated the distraction that caused [the

plaintiff's] injury, and, therefore, the open-and-obvious doctrine applies." *Id.* ¶ 26.

¶ 25    The same reasoning from *Bruns* and *Negron* hold true here. Plaintiff's arbitration

testimony that she was looking toward Western Avenue does not constitute a legal distraction

from the open and obvious rule, nor does her argument on appeal that she was distracted because

she was pulling her bag. We conclude that the distraction exception to the open and obvious rule

does not apply in this case. However, application of the open and obvious doctrine does not end

the inquiry as to whether the premises owner or occupier owes a duty of due care. *Bruns*, 2014

IL 116998, ¶ 35. Accordingly, we must consider the four factors referenced earlier in this order:

"(1) the reasonable foreseeability of injury, (2) the reasonable likelihood of injury, (3) the

magnitude of the burden that guarding against injury places on the defendant, and (4) the

consequences of placing that burden on the defendant." *Id.*

¶ 26    "Application of the open and obvious rule affects the first two factors of the duty

analysis: the foreseeability of injury, and the likelihood of injury." *Id.* "Where the condition is

open and obvious, the foreseeability of harm and the likelihood of injury will be slight, thus

weighing against the imposition of a duty." *Id.* The supreme court in *Bruns* found that the first

11

No. 1-18-2132

two factors carried little weight. "The first factor carries little weight because a defendant is ordinarily not required to foresee injury from a dangerous condition that is open and obvious." *Id.* ¶ 36. "The second factor also carries little weight because 'it is assumed that persons encountering the potentially dangerous condition of the land will appreciate and avoid the risks,' making the likelihood of injury slight." *Id.* (quoting *Sollami*, 201 Ill. 2d at 17). In reviewing the third and fourth factors, the supreme court observed that "the consequences of imposing that burden on the City would go well beyond the instant sidewalk defect. The City has miles of sidewalk to maintain. The imposition of this burden is not justified given the open and obvious nature of the risk involved." *Id.* ¶ 37.

¶ 27    Similarly, in considering where the City owed the plaintiff a duty of care, the *Negron* court concluded that the burden against the City was significant.

> "Because the distraction in this case was not reasonably foreseeable, the likelihood of injury from the open and obvious sidewalk defect was correspondingly low. Furthermore, the burden of guarding against such injury would be extremely high. The city has miles of sidewalk to maintain. Protecting pedestrians from random distracting noises on a city-wide basis would impose an unreasonable burden upon the city." *Negron*, 2016 IL App (1st) 143432, ¶ 26.

¶ 28    We agree with the conclusions in *Bruns* and *Negron* regarding the duty of care to plaintiff. As discussed in *Bruns*, the first two factors carry little weight where the condition is open and obvious as it is not reasonably foreseeable that one would fail to avoid encountering an open and obvious condition on the sidewalk. In regard to the third and fourth factors, we find the magnitude of the burden on the City to prevent any injury would be "extremely high" and nearly impossible to achieve. Accordingly, we hold that the City had no duty to protect plaintiff from

12

No. 1-18-2132

the open and obvious sidewalk defect. Therefore, the trial court properly granted summary

judgment in favor of the City.

¶ 29    Based on the foregoing reasons, we affirm the decision of the circuit court of Cook

County.

¶ 30    Affirmed.

April 1, 19

No. 18-2132

## IN THE
## APPELLATE COURT OF ILLINOIS
## FIRST JUDICIAL DISTRICT

| MATTIE LOMAX, | ) Appeal from the Circuit Court of |
|---|---|
| | ) Cook County, Illinois, |
| Plaintiff-Appellant, | ) Municipal Department |
| | ) |
| v. | ) No. 2017 M1 302539 |
| | ) |
| CITY OF CHICAGO, | ) The Honorable |
| | ) **Catherine A. Schneider**, |
| Defendant-Appellee. | ) Judge Presiding |

### ORDER

On motion of the CITY OF CHICAGO for an extension of time to file its brief on or before May 9, 2019, due notice having been served, for good cause shown and the court being fully advised;

IT IS HEREBY ORDERED that the motion is granted/denied.

_____
JUSTICE

_____
JUSTICE

_____
JUSTICE

DATED:

Stephen Collins
Assistant Corporation Counsel
30 North LaSalle St, Suite 800
Chicago, Illinois 60602
Direct: (312) 742-0115
stephen.collins@cityofchicago.org
appeals@cityofchicago.org

**ORDER ENTERED**

APR 0 1 2019

**APPELLATE COURT FIRST DISTRICT**

*Sept 9, 2019*



Clerk's Office
APPELLATE COURT FIRST DISTRICT
State of Illinois
160 North LaSalle Street, Rm S1-700
Chicago, Illinois 60601

*312-793-5484*

September 9, 2019

Honorable Dorothy Brown
Richard J. Daley Center
Room 1001
Chicago, IL 60602

RE:  MATTIE LOMAX v. CITY OF CHICAGO
     General No.: 1-18-2132
     County: Cook County
     Trial Court No: 17M1302539

Dear Honorable Brown:

Attached is the Mandate of the Appellate Court in the above entitled cause.

We are sending the attorneys of record a copy of this letter to inform them that the mandate of the Appellate Court has been filed with you.


Thomas D. Palella
Clerk of the Appellate Court

c:    Corporation Counsel of Chicago
      Mattie Lomax

April 1, 19

No. 18-2132

## IN THE
## APPELLATE COURT OF ILLINOIS
## FIRST JUDICIAL DISTRICT

| | |
|---|---|
| MATTIE LOMAX, | ) Appeal from the Circuit Court of |
| | ) Cook County, Illinois, |
| Plaintiff-Appellant, | ) Municipal Department |
| | ) |
| v. | ) No. 2017 M1 302539 |
| | ) |
| CITY OF CHICAGO, | ) The Honorable |
| | ) **Catherine A. Schneider,** |
| Defendant-Appellee. | ) Judge Presiding |

### ORDER

On motion of the CITY OF CHICAGO for an extension of time to file its brief on or before May 9, 2019, due notice having been served, for good cause shown and the court being fully advised;

IT IS HEREBY ORDERED that the motion is granted/~~denied~~.

_____
JUSTICE

_____
JUSTICE

_____
JUSTICE

DATED:

Stephen Collins
Assistant Corporation Counsel
30 North LaSalle St, Suite 800
Chicago, Illinois 60602
Direct: (312) 742-0115
stephen.collins@cityofchicago.org
appeals@cityofchicago.org

## ORDER ENTERED

### APR 0 1 2019

**APPELLATE COURT FIRST DISTRICT**

No. 1-18-2132

In the
**Appellate Court of Illinois**
**First Judicial District - Sixth Division**

MATTIE LOMAX,                                          )        Appeal from the
                                                       )        Circuit Court of Cook County.
    Plaintiff-Appellant,                               )
                                                       )
    v.                                                 )        No. 17 M1 302539
                                                       )
CITY OF CHICAGO,                                       )
                                                       )
    Defendant-Appellee.                                )        Honorable Catherine Schneider,
                                                       )        Judge Presiding.

# O R D E R

This case comes before the court on the plaintiff-appellant's motion filed December 27, 2018, and the City of Chicago's objection thereto. The motion is entitled a motion for leave to file the record *instanter*, but the text of the motion asks for an immediate judgment. The clerk of this court has advised that there is no record "in the queue" waiting to be filed.

The plaintiff-appellant was required to file the record before December 3, 2018. The plaintiff-appellant is required to secure preparation of the record by the Clerk of the Circuit Court so that it can be filed electronically with this court. Additionally, this court will not consider whether the judgment below should be reversed until after the record has been filed and the parties have had the opportunity to file briefs in support of their positions.

This court hereby ORDERS:

1.    The motion is DENIED.

2.    On the court's own motion, the deadline for plaintiff-appellant to file the record is extended to February 8, 2019.

ENTER:

_____
Presiding Justice

**ORDER ENTERED**

JAN 0 3 2019

**APPELLATE COURT, FIRST DISTRICT**

July 18, 2019

2019 IL App (1st) 182132-U

FOURTH DIVISION
July 18, 2019

No. 1-18-2132

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| MATTIE LOMAX, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 17 M1 302539 |
| CITY OF CHICAGO, a Municipal Corporation, | ) | |
| | ) | Honorable |
| Defendant-Appellee. | ) | Catherine A. Schneider, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE McBRIDE delivered the judgment of the court.
Justices Reyes and Burke concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court properly granted summary judgment in favor of the City because no legal duty existed where plaintiff was injured due to an open and obvious condition on the sidewalk.

¶ 2   Plaintiff Mattie Lomax, appearing *pro se*, filed a small claim action based on allegations of negligence against defendant the City of Chicago (City). Plaintiff alleged that she was injured when she fell on a raised sidewalk slab in September 2017 near West 63rd Street and South Western Avenue after she exited a Chicago Transit Authority (CTA) bus. The parties proceeded



No. 1-18-2132

to arbitration and an award was entered in favor of the City. Plaintiff rejected the arbitration award in the trial court. The City then filed a motion for summary judgment, which the trial court granted.

¶ 3     On appeal, plaintiff, still appearing *pro se*, argues that the trial court erred in granting summary judgment because the distraction exception applies to the open and obvious nature of the raised sidewalk slab.

¶ 4     In December 2017, plaintiff filed her initial small claims negligence complaint against the City of Chicago Law Department Claims Unit and a named claims specialist. In January 2018, the City filed a motion to dismiss the complaint for naming an improper party because the City's law department is not an entity that can be sued separate and apart from the City. The trial court granted the motion and allowed plaintiff 28 days to file an amended complaint.

¶ 5     In February 2018, plaintiff filed her amended complaint against the City in the small claims division of the trial court and alleged negligence. Her complaint alleged that on or about September 29, 2017, between 11 and 11:30 a.m. Plaintiff was exiting the CTA 63rd Street bus at 6301 South Western Avenue. She was

> "carefully getting off the 63rd Street bus walking left to cross S. Western Ave trip [*sic*] and fall on damage sidewalk that was lifted up from the ground, suffering a facture of her right knee and painful and serious injuries, all as a sole and proximate result of the hazardous conditions of the sidewalk cause by the negligence of the Defendant."

She claimed she sustained a "serious injury to her right knee and has incurred reasonable medical treatments as a result of the fall of the necessary treatment of said injury and reasonable future treatment." Plaintiff sought an award of $5,000.

2

No. 1-18-2132

¶ 6    Plaintiff attached several exhibits to her complaint. She included photocopied pictures of the sidewalk as well as a street view image of 6301 South Western Avenue in Chicago from Google Maps with a handwritten notation including an arrow stating, "Here is where the sidewalk was lifted from the ground." Plaintiff also attached her claim form for the City claims unit. Plaintiff further attached her medical records from Advocate Trinity Hospital in Chicago. The records were dated October 6, 2017. The first record related to an injury of plaintiff's right knee and the clinical indication was "contusion about one week ago. Pain." Multiple x-rays of plaintiff's right knee were taken and showed no fracture. The second record involved plaintiff's left shoulder and an indication of "left shoulder pain following injury." Multiple x-rays were taken and showed no fracture, dislocation or significant abnormality.

¶ 7.    The case was set for mandatory arbitration. An arbitration hearing took place on June 25, 2018. Plaintiff was the only witness at the hearing. She testified that on September 29, 2017, she was on 63rd Street going towards Western Avenue while on a CTA bus. She exited the bus and was pulling her bag. She then "just, boom, *** fell down." Plaintiff tried to show the arbitrators a picture of the sidewalk she obtained from Google Maps. Plaintiff stated that the address where she fell was 6301 South Western Avenue. She estimated that she was two feet from the curb when she fell. She had exited the bus and "had turned to start walking, boom [she] just fell completely down." Plaintiff "was looking towards Western trying to cross the street and catch the next bus down to 95th." She was walking normally and not in a hurry. When asked if she was distracted, plaintiff answered, "No." Plaintiff had a small rolling bag in her right hand. No one was in front of her blocking her view of the sidewalk and it was daytime and a "nice day." She was wearing rubber-soled "sneakers."

3

No. 1-18-2132

¶ 8    Plaintiff testified that she was "not very familiar with that area," and estimated she had been to that location six times that year. Plaintiff admitted that she was aware of the City's 311 system. She did not report any defects at 63rd and Western before she fell and was not aware of anyone else contacting 311 prior to her fall. She did not see any construction.

¶ 9    Plaintiff stated that she was closer to Western. She estimated that she took two steps after she exited the bus before she fell. She did not realize there was a height differential in the sidewalk slab until she fell. She did not measure it, but estimated it was more than one inch and less than two inches lifted from the ground and it was approximately five feet long. There was nothing covering the sidewalk that would block her view. When she looked at the sidewalk after she fell, she stated that it looked like something she should avoid because "[n]o one should walk over that." Plaintiff admitted she was not looking down and thought "it was just a smooth sidewalk." When she fell, everything came "down." Two women standing nearby asked if she wanted them to call the paramedics and plaintiff said no. Plaintiff estimated she was at that location approximately 15 minutes. Plaintiff got up, crossed the street, and proceeded to take the Western bus southbound. Plaintiff went to her original planned destination, a bike shop to fix a tire. She then went home by bus.

¶ 10    After she got home, plaintiff started "feeling funny," and "things started to hurt." She called the doctor and she went to get x-rays a few days later. She has not sought any further treatment. She had not injured her right knee before or been involved in any other accident.

¶ 11    Following the hearing, the arbitrators entered an award in favor of the City. In July 2018, plaintiff filed a rejection of that arbitrators' award and requested trial. On July 24, 2018, the City filed a motion for summary judgment, arguing that the sidewalk condition was open and obvious and that the City did not have actual or constructive notice of the condition. In August 2018,

4

No. 1-18-2132

plaintiff filed a motion to strike the City's motion for summary judgment, and in September 2018, the City filed a response to plaintiff's motion. In October 2018, plaintiff filed another motion to strike the City's motion for summary judgment and also requested summary judgment in her favor. In her motion, plaintiff for the first time argued for a finding of willful and wanton conduct. She also asserted that the distraction exception applied to the open and obvious doctrine regarding the sidewalk where she fell. On October 1, 2018, the trial court granted the City's motion for summary judgment and found the sidewalk condition to be open and obvious.

¶ 12    This appeal followed in compliance with Illinois Supreme Court Rule 303 (eff. Jan. 1, 2015) with a timely notice of appeal filed on October 1, 2018. Accordingly, this court has jurisdiction of this appeal under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994).

¶ 13    On appeal, plaintiff argues that the trial court erred in granting summary judgment because the distraction exception applied when she encountered the open and obvious condition of the sidewalk. Plaintiff also contends that the City improperly raised section 2-201 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/2-201 (West 2016)) in their summary judgment motion for the first time. However, the City did not raise any argument related to section 2-201 of the Tort Immunity Act in the trial court, nor has it raised such an argument on appeal. Accordingly, we disregard any argument by plaintiff related to this section of the Tort Immunity Act.

¶ 14    Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, indicate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016). We review cases

5

No. 1-18-2132

involving summary judgment *de novo. Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 349 (1998).

¶ 15    "To state a cause of action for negligence, a complaint must allege facts that establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 430 (2006). "The question of the existence of a duty is a question of law, and in determining whether a duty exists, the trial court considers whether a relationship existed between the parties that imposed a legal obligation upon one party for the benefit of the other party." *Sameer v. Butt*, 343 Ill. App. 3d 78, 85 (2003). In contrast, "whether a defendant breached the duty and whether the breach was the proximate cause of the plaintiff's injuries are factual matters for the jury to decide, provided there is a genuine issue of material fact regarding those issues." *Marshall*, 222 Ill. 2d at 430. " 'In the absence of a showing from which the court could infer the existence of a duty, no recovery by the plaintiff is possible as a matter of law and summary judgment in favor of the defendant is proper.' " *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 13 (quoting *Vasey v. Chicago Housing Authority*, 145 Ill. 2d 404, 411 (1991)).

¶ 16    Under section 3-102(a) of the Tort Immunity Act, a local public entity has "the duty to exercise ordinary care to maintain its property in a reasonably safe condition" for use by intended and permitted users. 745 ILCS 10/3-102(a) (West 2016). There are four factors to consider in a duty analysis: "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Bruns*, 2014 IL 116998, ¶ 14. "A legal duty refers to a relationship between the defendant and the plaintiff such that the law imposes on the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Choate v.*

6

No. 1-18-2132

*Indiana Harbor Belt Railroad Co.*, 2012 IL 112948, ¶ 22.

¶ 17    Generally, under the open and obvious rule, " 'a party who owns or controls land is not required to foresee and protect against an injury if the potentially dangerous condition is open and obvious.' " *Bruns*, 2014 IL 116998, ¶ 16 (quoting *Rexroad v. City of Springfield*, 207 Ill. 2d 33, 44 (2003)). "The open and obvious rule is also reflected in section 343A of the Restatement (Second) of Torts, which this court has adopted." *Id.* "Under section 343A, a 'possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them.' " *Id.* (quoting Restatement (Second) of Torts § 343A, at 218 (1965)). " 'Obvious' means that 'both the condition and the risk are apparent to and would be recognized by a reasonable [person], in the position of the visitor, exercising ordinary perception, intelligence, and judgment.' " *Id.* (quoting Restatement (Second) of Torts § 343A cmt. b, at 219 (1965)). "Whether a dangerous condition is open and obvious may present a question of fact," but "where no dispute exists as to the physical nature of the condition, whether the dangerous condition is open and obvious is a question of law." *Id.* ¶ 18. However, "[t]he existence of an open and obvious danger is not an automatic or *per se* bar to the finding of a legal duty on the part of a defendant." *Id.* ¶ 19.

¶ 18    On the day of her fall, plaintiff had exited the 63rd Street bus and walked approximately two steps before she tripped over the raised sidewalk slab. She testified at the arbitration hearing that it was daytime and nothing was blocking her view of the sidewalk. Plaintiff does not dispute that the raised sidewalk slab was open and obvious. She submitted photographs of the slab and described it as being raised more than one inch, but less than two inches and approximately five feet long. However, she contends that she was distracted and did not see the open and obvious condition of the sidewalk.

7

No. 1-18-2132

¶ 19    The distraction exception to the open and obvious rule "applies ' "where the possessor of land has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." ' " *Bruns*, 2014 IL 116998, ¶ 20 (quoting *Sollami v. Eaton*, 201 Ill. 2d 1, 15 (2002), quoting Restatement (Second) of Torts § 343A cmt. f, at 220 (1965)). "[T]he distraction exception will only apply where evidence exists from which a court can infer that plaintiff was actually distracted." *Id.* ¶ 22.

¶ 20    In *Bruns*, the plaintiff was going to an appointment at an eye clinic when she stubbed her toe on a raised crack on a city-maintained sidewalk, causing her to fall. *Id.* ¶ 4. At the time of her fall, the plaintiff was not looking down at her feet, but was looking toward the clinic's steps and door. *Id.* The plaintiff admitted that she had seen the crack on prior visits and was certain that she saw it on the day of her fall. *Id.* The plaintiff filed a negligence action against the city. *Id.* The city filed its motion for summary judgment arguing that the sidewalk defect was open and obvious, and that it was therefore not required to foresee and protect against injuries resulting from the defect. *Id.* In answer to the motion, the plaintiff argued that she was distracted because she was looking at the clinic door, and that it was reasonable for the city to foresee that a person could become distracted in this manner. *Id.* ¶ 7. In granting summary judgment, the trial court concluded that the defect was open and obvious and that the distraction theory was inapplicable. *Id.* ¶ 8. The appellate court reversed the grant of summary judgment. *Id.* ¶ 13.

¶ 21    The supreme court reversed the appellate court, finding that that the distraction theory only applies when there is evidence from which the court can infer that the plaintiff was actually distracted, and that the "mere fact of looking elsewhere does not constitute a distraction." *Id.* ¶ 22. The supreme court also noted the circumstances in which the distraction exception had

8

No. 1-18-2132

been found applicable. *Id.* ¶¶ 24-27; see *Ward v. Kmart Corp.*, 136 Ill.2d 132, 153-54 (1990) (Kmart sold the plaintiff bulky merchandise that obscured his view and prevented him from walking into a five-foot concrete post outside the entrance of the store); *Deibert v. Bauer Brothers Construction Co.*, 141 Ill. 2d 430, 439-40 (1990) (plaintiff fell in a heavy equipment tire rut when exiting a bathroom because he was looking upward to ensure that workers were not throwing debris down from a balcony as the workers had historically done on this project); *American National Bank & Trust Co. of Chicago v. National Advertising Co.*, 149 Ill. 2d 14, 28-29 (1992) (billboard painter who came into contact with a high-voltage power line hanging above a walkrail that ran the length of the billboard was distracted by having to carefully watch where to place his feet on the walkrail); *Rexroad v. City of Springfield*, 207 Ill. 2d 33, 46 (2003) (student manager of a football team instructed by a coach to retrieve a helmet in the locker room, and forced to return using a different path because the original access gate was locked, was focused on returning the helmet to the coach and was distracted from a large hole in this alternate path to the field).

¶ 22    Here, plaintiff contends that she was distracted "while getting off a public bus pulling a bag." However, at the arbitration hearing, plaintiff admitted that she was looking toward Western because she planned to cross to catch a bus. She has not identified any hazard that prevented her from seeing the raised sidewalk slab. As the *Bruns* court held, the "mere fact of looking elsewhere does not constitute a distraction." *Bruns*, 2014 IL 116998, ¶ 22. This case is similar to the circumstances present in *Bruns* like the plaintiff there, plaintiff in this case was looking at Western rather than the sidewalk. In rejecting the plaintiff's distraction claim, the supreme court in *Bruns* observed:

No. 1-18-2132

> "In the absence of evidence of an actual distraction, we disagree with plaintiff that it was objectively reasonable for the City to expect that a pedestrian, generally exercising reasonable care for her own safety, would look elsewhere and fail to avoid the risk of injury from an open and obvious sidewalk defect. The plaintiff's position is contrary to the very essence of the open and obvious rule: because the risks are obvious, the defendant ' "could not reasonably be expected to anticipate that people will fail to protect themselves from any danger posed by the condition." ' *Bucheleres* [v. *Chicago Park District*], 171 Ill. 2d [435,] 448 [1996] (quoting *Ward*, 136 Ill. 2d at 148). Were we to conclude, as plaintiff does, that simply looking elsewhere constitutes a legal distraction, then the open and obvious rule would be upended and the distraction exception would swallow the rule."

¶ 23    We also find the circumstances in the present case analogous to the facts presented in *Negron v. City of Chicago*, 2016 IL App (1st) 143432. In that case, the plaintiff was walking on the south side of Division Street in Chicago. There was a crowd in the area. She heard someone yell behind her and she looked over her shoulder as she continued to walk. A few steps later, the plaintiff tripped over a section of sidewalk that had a two-inch height differential from the adjacent slabs. The weather was clear, it was still light out, and nothing obstructed her view of the sidewalk. She fell and fractured both elbows. *Id.* ¶¶ 1-5. The plaintiff then filed a negligence action against the City and alleged that she was injured because the City failed to maintain the sidewalk. *Id.* ¶ 6. The city moved for summary judgment. *Id.* After arguments, the trial court granted summary judgment, finding that the sidewalk defect was open and obvious and the plaintiff's claimed distraction exception was not reasonably foreseeable. *Id.* ¶ 10.

No. 1-18-2132

¶ 24    On appeal, the reviewing court concluded that the distraction exception was not applicable to the plaintiff's case. The court noted that the City "did not create or contribute to the distraction that caused" the plaintiff's accident. *Id.* ¶ 20. "A defendant that either creates or contributes to a distraction will typically have reason to know it exists." *Id.* "Conversely, where a defendant bears no responsibility for a distraction, courts frequently find that the defendant could not reasonably have foreseen it." *Id.* The court then rejected the plaintiff's contentions that a distraction was reasonable foreseeable. *Id.* ¶¶ 22-26. "None of [the plaintiff's] arguments persuades us that the city could reasonably have anticipated the distraction that caused [the plaintiff's] injury, and, therefore, the open-and-obvious doctrine applies." *Id.* ¶ 26.

¶ 25    The same reasoning from *Bruns* and *Negron* hold true here. Plaintiff's arbitration testimony that she was looking toward Western Avenue does not constitute a legal distraction from the open and obvious rule, nor does her argument on appeal that she was distracted because she was pulling her bag. We conclude that the distraction exception to the open and obvious rule does not apply in this case. However, application of the open and obvious doctrine does not end the inquiry as to whether the premises owner or occupier owes a duty of due care. *Bruns,* 2014 IL 116998, ¶ 35. Accordingly, we must consider the four factors referenced earlier in this order: "(1) the reasonable foreseeability of injury, (2) the reasonable likelihood of injury, (3) the magnitude of the burden that guarding against injury places on the defendant, and (4) the consequences of placing that burden on the defendant." *Id.*

¶ 26    "Application of the open and obvious rule affects the first two factors of the duty analysis: the foreseeability of injury, and the likelihood of injury." *Id.* "Where the condition is open and obvious, the foreseeability of harm and the likelihood of injury will be slight, thus weighing against the imposition of a duty." *Id.* The supreme court in *Bruns* found that the first

11

No. 1-18-2132

two factors carried little weight. "The first factor carries little weight because a defendant is ordinarily not required to foresee injury from a dangerous condition that is open and obvious." *Id.* ¶ 36. "The second factor also carries little weight because 'it is assumed that persons encountering the potentially dangerous condition of the land will appreciate and avoid the risks,' making the likelihood of injury slight." *Id.* (quoting *Sollami*, 201 Ill. 2d at 17). In reviewing the third and fourth factors, the supreme court observed that "the consequences of imposing that burden on the City would go well beyond the instant sidewalk defect. The City has miles of sidewalk to maintain. The imposition of this burden is not justified given the open and obvious nature of the risk involved." *Id.* ¶ 37.

¶ 27   Similarly, in considering where the City owed the plaintiff a duty of care, the *Negron* court concluded that the burden against the City was significant.

> "Because the distraction in this case was not reasonably foreseeable, the likelihood of injury from the open and obvious sidewalk defect was correspondingly low. Furthermore, the burden of guarding against such injury would be extremely high. The city has miles of sidewalk to maintain. Protecting pedestrians from random distracting noises on a city-wide basis would impose an unreasonable burden upon the city." *Negron*, 2016 IL App (1st) 143432, ¶ 26.

¶ 28   We agree with the conclusions in *Bruns* and *Negron* regarding the duty of care to plaintiff. As discussed in *Bruns*, the first two factors carry little weight where the condition is open and obvious as it is not reasonably foreseeable that one would fail to avoid encountering an open and obvious condition on the sidewalk. In regard to the third and fourth factors, we find the magnitude of the burden on the City to prevent any injury would be "extremely high" and nearly impossible to achieve. Accordingly, we hold that the City had no duty to protect plaintiff from

12

No. 1-18-2132

the open and obvious sidewalk defect. Therefore, the trial court properly granted summary judgment in favor of the City.

¶ 29    Based on the foregoing reasons, we affirm the decision of the circuit court of Cook County.

¶ 30    Affirmed.

*Oct 16, 2019*

## IN THE APPELLATE COURT OF ILLINOIS
### FIRST JUDICIAL DISTRICT

MATTIE LOMAX,                          )
                                       )
    Plaintiff-Appellant,              )
                                       )
v.                                     )
                                       )      No. 1-18-2132
CITY OF CHICAGO, a Municipal Corporation, )
                                       )
    Defendant-Appellee.               )
                                       )

### ORDER

This matter coming to be heard on plaintiff-appellant's *pro se* motion to recall the mandate, and being fully advised in the premises;

IT IS HEREBY ORDERED that this Motion is DENIED because this court is without jurisdiction to recall the mandate.

_____
Justice

_____
Justice

_____
Justice

## ORDER ENTERED

OCT 1 6 2019

**APPELLATE COURT FIRST DISTRICT**

PLAINTIFF'S EXHIBIT
E

*Nov 13, 2019*



**CLERK'S OFFICE**
**APPELLATE COURT FIRST DISTRICT**
STATE OF ILLINOIS
160 NORTH LASALLE STREET, RM S1400
CHICAGO, ILLINOIS 60601

November 13, 2019

Honorable Dorothy Brown
Richard J. Daley Center
Room 1001
Chicago, IL 60602

RE:  MATTIE LOMAX v. CITY OF CHICAGO
General No.: 1-18-2132
County: Cook County
Trial Court No: 17M1302539

Dear Honorable Brown:

   We have been instructed to recall the original mandate issued to you on September 9, 2019, in the above entitled cause.

   Kindly return the mandate to us at your earliest convenience.

Thomas D. Palella
Clerk of the Appellate Court

c:     Corporation Counsel of Chicago
       Mattie Lomax

*Jan. 13 2020* *January*

### STATE OF ILLINOIS
### SUPREME COURT

At a Term of the Supreme Court, begun and held in Springfield, on Monday, the 13th day of January, 2020.

Present: Anne M. Burke, Chief Justice

Justice Rita B. Garman
Justice P. Scott Neville, Jr.
Justice David K. Overstreet

Justice Mary Jane Theis
Justice Michael J. Burke
Justice Robert L. Carter

On the 29th day of January, 2020, the Supreme Court entered the following judgment:

No. 125425

Mattie Lomax,

    Petitioner

    v.

City of Chicago, a municipal corporation,

    Respondent

Petition for Leave to
Appeal from
Appellate Court
First District
1-18-2132
17M1302539

The Court having considered the Petition for leave to appeal and being fully advised of the premises, the Petition for leave to appeal is DENIED.

As Clerk of the Supreme Court of the State of Illinois and keeper of the records, files and Seal thereof, I certify that the foregoing is a true copy of the final order entered in this case.



IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed the seal of said Court, this 3rd day of April, 2020.

*Carolyn Taft Grosboll* Clerk,

Supreme Court of the State of Illinois

# SUPREME COURT OF ILLINOIS

Jan 20, 20

SUPREME COURT BUILDING
200 East Capitol Avenue
SPRINGFIELD, ILLINOIS 62701-1721
(217) 782-2035

FIRST DISTRICT OFFICE
160 North LaSalle Street, 20th Floor
Chicago, IL 60601-3103
(312) 793-1332
TDD: (312) 793-6185

January 29, 2020

In re:  Mattie Lomax, petitioner, v. City of Chicago, etc., respondent.
Leave to appeal, Appellate Court, First District.
125425

The Supreme Court today DENIED the Petition for Leave to Appeal in the above entitled cause.

The mandate of this Court will issue to the Appellate Court on 03/04/2020.

Very truly yours,

Carolyn Taft Grosboll

Clerk of the Supreme Court

125425

*March 04, 2020*



# SUPREME COURT OF ILLINOIS

**SUPREME COURT BUILDING**
200 East Capitol Avenue
SPRINGFIELD, ILLINOIS 62701-1721
(217) 782-2035

FIRST DISTRICT OFFiCE
160 North LaSalle Street, 20th Floor
Chicago, IL 60601-3103
(312) 793-1332
TDD: (312) 793-6185

January 29, 2020

In re:   Mattie Lomax, petitioner, v. City of Chicago, etc., respondent.
Leave to appeal, Appellate Court, First District.
125425

The Supreme Court today DENIED the Petition for Leave to Appeal in the above entitled cause.

The mandate of this Court will issue to the Appellate Court on 03/04/2020.

Very truly yours,

*Carolyn Taft Grosboll*

Clerk of the Supreme Court

*April 03, 2020*



# SUPREME COURT OF ILLINOIS

SUPREME COURT BUILDING
200 East Capitol Avenue
SPRINGFIELD, ILLINOIS 62701-1721

CAROLYN TAFT GROSBOLL
Clerk of the Court

(217) 782-2035
TDD: (217) 524-8132

April 03, 2020

FIRST DISTRICT OFFICE
160 North LaSalle Street, 20th Floor
Chicago, IL 60601-3103
(312) 793-1332
TDD: (312) 793-6185

Mattie Lomax
7733 S. Kingston Ave.
Apt.2
Chicago, IL 60649

In re:    Lomax v. City of Chicago
125425

Today the following order was entered in the captioned case:

Motion by Petitioner, *pro se*, for leave to file a motion for reconsideration of
the order denying petition for leave to appeal. <u>Denied</u>.

Order entered by the Court.

This Court's mandate shall issue forthwith to the Appellate Court, First
District.

Very truly yours,

*Carolyn Taft Grosboll*

Clerk of the Supreme Court

cc:    Appellate Court, First District
City of Chicago Law Department
Margaret Mendenhall Casey

7/12/2021

July 8, 2021

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## MUNICIPAL DEPARTMENT, FIRST DISTRICT

MATTIE LOMAX,                    )
                                 )
    Plaintiff,               )
                                 )      No. 17 M1 302539
v.                               )
                                 )
CITY OF CHICAGO,                 )
                                 )
    Defendant.               )

## ORDER

THIS MATTER HAVING come before the Court on Plaintiff's Motion by Mattie Lomax

for Petition for Rehearing, with due notice to the parties and the Court being fully advised in the

premises,

    IT IS HEREBY ORDERED:

1.    Motion by Mattie Lomax for Petition for Rehearing is denied. THE TRIAL COURT
    LACKS JURISDICTION.

Judge Robert F. Harris

JUL 08 2021

Circuit Court - 2205

**DATED: July 8, 2021**    Entered:

*Prepared by:*
    Meza/Ruether/Thomas
    2 North LaSalle Street, Suite 350
    Chicago, IL 60602
    (312) 742-8416
    Joseph.Thomas2@cityofchicago.org
    Corporation.Counsel@cityofchicago.org
    Attorney No. 90909

Feb 2, 22

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## MUNICIPAL DEPARTMENT - FIRST DISTRICT

MATTIE LOMAX,               )
                                      )
                Plaintiff,      )
                                        )
     v.                       )    No.    2017 M1 302539
                                          )
CITY OF CHICAGO, a Municipal Corporation,   )
                                        )
               Defendant.    )

## ORDER

This matter having come before this Court on the Plaintiff's Petition to the Reviewing Court/Take Notice, the City of Chicago being present. This Court being fully-advised, IT IS HEREBY ORDERED THAT:

1. The Court held this matter until 9:20 a.m. to allow Plaintiff time to appear via zoom.
2. The Plaintiff failed to appear by 9:20 a.m., though the matter was set for 9:00 a.m.
3. The Plaintiff's Petition is hereby stricken.

_____
Judge

_____
Date

Prepared by: Barbara Burke, Assistant Corporation Counsel
Attorney #90909
2 N. LaSalle Street
Suite 350
Chicago, IL 60602
(312) 744-0597
Barbara.Burke@cityofchicago.org